## NATIONAL BISCUIT CO. v. KELLOGG CO.

### No. 5801.

Circuit Court of Appeals, Third Circuit.
April 12, 1937.
Rehearing Denied July 13, 1937.

Thomas G. Haight, of Jersey City, N. J., David A. Reed, of Pittsburgh, Pa., Hugh M. Morris, of Wilmington, Del., and Drury W. Cooper and Charles A. Vilas, both of New York City, for appellant.

Edward S. Rogers and Crichton Clarke, both of New York City, and Arthur B. Seibold, of Chicago, Ill., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

When this case was here before, we affirmed the decree of the District Court by a per curiam adopting the opinion of that court. It is before us now on reargument. The District Court and this court felt that the case was controlled by Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 1014, 41 L.Ed. 118 on the ground that the name "Shredded Wheat" was a descriptive term, describing the product of the plaintiff and that, in any event, upon the expiration of the Perky patent No. 548,086, issued October 5, 1895, the name passed into the public domain, remained there, and became public property. Consequently we held that the appellant, hereinafter called plaintiff, did not have the right to the exclusive use of the name.

After exhaustively reviewing the authorities, Mr. Justice White in Singer Mfg. Co. v. June Mfg. Co., supra, declared the law on this subject to be as follows: "The result, then, of the American, the English, and the French doctrine universally upheld is this: That where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the

monopoly which the patent created. Where another avails himself of this public dedication to make the machine and use the generic designation, he can do so in all forms, with the fullest liberty, by affixing such name to the machines, by referring to it in advertisements, and by other means, subject, however, to the condition that the name must be so used as not to deprive others of their rights, or to deceive the public; and, therefore, that the name must be accompanied with such indications that the thing manufactured is the work of the one making it, as will unmistakably inform the public of that fact."

■ Therefore, upon the expiration of the patent, the defendant was free to adopt the name of "Shredded Wheat" to designate its product with some adequate explanation that the product was made by it and not by the plaintiff. This, however, it did not do, but waited ten years, and then, when it attempted to do so, immediately stopped upon complaint of the plaintiff and did not start again for five years.

In or about the year 1893 Henry D. Perky put into commercial use a new process for a form of food manufactured out of whole wheat and called the product "Shredded Wheat." The evidence shows that the process consisted in cleaning, curing, drying, and boiling the wheat and thereafter passing the softened grains between two rollers. The surface of one of these was flat and the other contained grooves. The rollers exerted great pressure upon the wheat, which came out in long filaments or threads, which were later cut, made in the form of a pillow-shaped biscuit, placed in an oven at a temperature of approximately 500 degrees Fahrenheit, and baked until all but a small percentage of the moisture had been removed. The biscuits were then sold under the name of "Shredded Wheat," and "Shredded Wheat Biscuit."

With the exception of the Ross Company, for a short time in 1915, and the defendant, for a short time in 1922, no one, in the fifteen years after the expiration of the patent, used the name "Shredded Wheat" to designate his product, and they both immediately stopped on complaint of plaintiff.

In 1927, however, the defendant began again to manufacture biscuits and sell them under the name of "Shredded Whole Wheat Biscuit." Suit was brought against it in the District Court of Connecticut. While that suit was pending, the defendant in 1930 abandoned the name of "Shredded

Wheat" to designate its product and instead used the name of "Kellogg's Whole Wheat Biscuit." Thereupon the suit was discontinued.

But in 1932 the defendant started to use in its advertisements the name "Shredded Wheat" and the plaintiff's trade-mark, consisting of a dish, containing two biscuits submerged in milk, to identify its product.

During that period of fifteen years, after the expiration of the Perky patent in 1912, the plaintiff and its predecessors spent more than $17,000,000 in advertising, and creating good will in the name of "Shredded Wheat" and in its trade-mark.

They thus built up a large business and a very valuable good will. Between 1896 and 1932 they sold in the United States 45,353,-320 cases, containing 19,592,634,240 biscuits. In 1932, the product was found upon the breakfast tables of more than 25,000,000 families. It is undisputed that at the time defendant adopted the name "Shredded Wheat," and the trade-mark of the plaintiff to designate its product, the trade and consumers generally had come to regard the name and trade-mark as identifying the plaintiff's biscuit.

■ If the name "Shredded Wheat" were purely descriptive of plaintiff's product it could not have been the subject of a patent, for "whatever is mere description is open to all the world." Cheavin v. Walker, 5 Ch.Div. 850; Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 194, 16 S.Ct. 1002, 41 L.Ed. 118. Defendant contends that the name is descriptive, and may be used by it, but we do not think it is. The evidence shows that in reducing the grains of wheat to the product called "Shredded Wheat" there is no cutting or tearing into small pieces or shreds. As above stated, after the wheat has been cleaned, cooked, cured, and partially dried, it is passed between two rollers of highly tempered steel in contact at high pressure, one roller having a flat surface and the other having grooves in its circumference varying in depth from .017 to .024 inches. The grains of wheat are thus forced into the grooves, mashed, and the component parts thoroughly macerated. They come from the rolls in the form of long filaments or threads. These threads of wheat come out or extrude from the rollers just as steel rails do when steel is passed between rollers, and just as copper wire does when copper is passed between rollers. But it has never been suggested that in making steel rails or copper wire the steel or wire was "shred-

ded." Neither can it be said that the wheat is "shredded" in the plaintiff's process. It is mashed and mangled. The name at most is merely suggestive, and words suggestive of the qualities or characteristics of an article may be used as valid trade-marks. Pennsylvania Salt Mfg. Co. v. Myers (C. C.) 79 F. 87; Globe-Wernicke Co. v. Brown et al. (C.C.) 121 F. 185; Trinidad Asphalt Manufacturing Co. v. Standard Paint Co. (C.C.A.) 163 F. 977; Van Camp Sea Food Co. v. Alexander B. Stewart Organizations (Cust. & Pat.App.) 50 F.(2d) 976. The true descriptive name for this product is "whole wheat biscuit." This has been recognized by the appellant's competitors and many others. Twenty-seven states, including Delaware, and many foreign countries have accepted and registered the word "Shredded Wheat" as a legitimate trade-mark which could not properly be done if the name were simply descriptive.

But assuming, merely for the sake of argument, that the word "shredded" was originally a descriptive term and used to describe the action upon the wheat, it would manifestly be unfair after all these years and the expenditure of vast sums of money, when the name has acquired a secondary meaning, and has come to stand for the product itself, to allow the defendant to use it as it has done and thus acquire the trade which rightfully belongs to plaintiff.

In 1912, when the Perky patent expired, the defendant or any competitor might have used the name and form of the biscuit under proper restrictions, to designate his product, but the fact is that nobody did it, and nobody attempted to do it, with the exception of the defendant and the Ross Company, as above stated. During all this time the defendant and all other competitors sat by and allowed the plaintiff at great expense to make "Shredded Wheat" a household word and the form of its biscuit known throughout the world as its own product. Some competitors sold their product which in a sense is similar to the plaintiff's under descriptive names. For instance, the defendant called its product "Kellogg's Whole Wheat Biscuit." This is exactly what it is. It is a biscuit made from whole wheat by Kellogg. But this did not enable the defendant to get the property which the plaintiff had built up in the name of "Shredded Wheat," and so it abandoned its effort to sell its product as "Kellogg's Whole Wheat Biscuit." The Quaker Oats Company manufactured a biscuit in accordance with the process of the Perky patent and called it "Muffets." The Ross Company called its biscuit "Whole Wheat Biscuit," and the Loose Wiles Biscuit Company called its biscuit "Rippled Wheat."

The case now stands in equity just as it would have stood if there had been no patent before 1912 and the plaintiff's competitors had sat by and allowed it from that time on to build up at great expense a valuable good will in the name. If defendant had desired to use the name at the expiration of the patent, it should have seasonably done so, but it did not. It rather slept away its rights for fifteen years and now comes in, adopts the name and trade-mark, and tries to appropriate the fruit of the plaintiff's labor and money. The adoption by any one of the name and form of an article under which a competitor has been selling it carries with it the presumption that he expects to derive benefit from this adoption and intends to mislead the public with probability of success. Shredded Wheat Company v. Humphrey Cornell Co. (D.C.) 244 F. 508, 519, affirmed in (C.C.A.) 250 F. 960.

When a person, after the expiration of a patent, has spent such enormous amounts of money during a period of fifteen years to create a valuable property right in the name and form of his product, equity today will not permit another to apply the name and form of the merchandise to his product and thus appropriate it to his own use and advantage and to the injury of the one who has created the good will. Upon the expiration of the patent, the property right in the name passed to the public, but, if the public wished to retain this right in its domain, it had to avail itself of the right within a reasonable time. 18 Corpus Juris, 72.

This is a case of unfair competition and not of the infringement of a patent. When a name, admittedly descriptive, has acquired a secondary meaning and has come to stand for the article itself, equity will not permit a competitor to use the term as a trade-name, as defendant in this case has done. In the case of Barton v. Rex-Oil Co. (C.C.A.) 29 F.(2d) 474, 475, the word "Dyanshine" was involved. This was a purely descriptive term, and in the beginning was open to the world, but it had been used long enough to acquire a secondary meaning and was a trade-name for the shoe

polish itself which dyed and shined shoes at the same time. In that case we said:

"At the rehearing the appellants contended, and have succeeded in convincing us, that as a matter of fact the only way to prevent such confusion and deception in this case is to enjoin the appellee from using these words as the name of its product and from using them so positioned, spelled and printed on its cartons and advertising matter as to resemble a name for its product. Moreover, the complainants ·have satisfied us that on a definite and unequivocal finding of fact of this kind the law affords the remedy of injunction against the use of words which in instances such as this have acquired only a secondary meaning when those words are used as the name of a product as distinguished from their use in describing it."

We held that the defendant was guilty of unfair competition and enjoined it "from using the words 'dye and shine' in any way, form, arrangement, or manner of spelling as the name, or as resembling a name, of its product, leaving it free, of course, to use these words merely and exclusively in describing the qualities and characteristics of the product." This the defendant in the case at bar is free to do, but may not, as it has been doing, use the words "Shredded Wheat" as the trade-name of its product.

In the case of Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 81 F.(2d) 1, 4, Judge Evans, speaking for the Circuit Court of Appeals for the Seventh Circuit, said: "Some there are whose conception of business integrity and fair play is rather hazy, and generally ruled by self-interest, who attempt to justify efforts to acquire the business which another has developed through many years of fair dealing and through the expenditures of vast sums in advertising and in establishing a good will. This illegitimate activity has increased because in the past few decades the practice has grown among established enterprises of giving a name, or a particular form of container, or form of product, or other mark of identification to a product it makes or sells so that the public may know its product. Good will has followed familiarity with and use of the commodity. In some instances, the product has been patented. After the patent has expired, the same strenuous efforts are made to familiarize the users with the name or a word, which in its beginning may have been descriptive, but which because of form of container, combination of letters, etc., has identified it as the product of a certain individual or company. By so doing a property right is developed which should be respected."

In Scandinavia Belting Co. v. Asbestos & Rubber Works, 257 F. 937, 960 (C.C.A. 2), it was contended that the trade-mark "Scandinavia," in addition to being invalid because it was geographical, had passed into the public domain and had become public property upon the expiration of the patent covering the product to which the trademark had been applied during the life of the patent. In disposing of that contention the court said:

"But there is another and conclusive reason why this claim that the name 'Scandinavia' became open to the public on the expiration of the patent is of no avail to the defendant, for if it were to be conceded that the doctrine of the Singer Case originally applied the evidence shows that the public did not avail itself of the right, and that now because of the registration of the trade-mark under the 10 years' clause it is not at liberty to violate the plaintiff's exclusive right."

In the case of McKesson & Robbins v. Charles H. Phillips Chemical Co., 57 App. D.C. 342, 23 F.(2d) 763, 764, the validity of the registration of the trade-mark "Milk of Magnesia" was involved. The product manufactured by the owner of the mark was patented but the patent had expired. The owner of the mark had exclusive use of the trade-mark for ten years preceding the Trade-Mark Act of 1905. The Court of Appeals of the District of Columbia, in discussing the effect of the expiration of the patent and the doctrine of Singer Mfg. Co. v. June Mfg. Co., as applied to the facts of that case, said:

"Where the public fails to avail itself of the right to manufacture the patented article and use the name by which it was designated, and 10 years' exclusive use of the mark intervenes prior to the Trade-Mark Act of 1905, the party using the mark is entitled to registration under the 10-year clause of the act."

Section 5 of the Trade-Mark Act of 1905 (15 U.S.C.A. § 85) provides that, when the applicant for the registration of a trademark or his predecessor has had actual and exclusive use of the mark as a trade-mark for ten years prior to the passage of the act, nothing in the act should prevent its registration. This provision of the act was

in effect declaratory of the equitable doctrine that the exclusive use of a trade-mark by a person for ten years after the expiration of the patent entitles him to the exclusive use of it thereafter.

■ The defendant appropriated not only the name of the plaintiff's product, but also its form and shape, which has characterized the biscuit for more than forty years. The expiration of the design patent did not confer any rights upon the defendant, for the reason that the patent was held by Judge Kohlsaat to be invalid before its expiration on the ground that the design had been in use for more than two years prior to filing the application for the patent and for the further reason that, if it had not been declared invalid for that reason, the plaintiff and its predecessors used the particular form, appropriated by defendant, for its biscuit for forty years, and equity will not permit the defendant to use the name and trade-mark to designate its product. The case stands as it would have stood if there had been no patent and the plaintiff had started with a new and unpatented product in 1912, calling it by the trade-name of "Shredded Wheat" which it had sold in a particular form and for fifteen years had spent $17,000,000 in advertising it and had built up an invaluable good will in the name which it had exclusively used.

In order to secure the property of the plaintiff in the name and form of its product, the defendant placed upon its cartons the words, "The original has this signature: W. K. Kellogg." That is, defendant not only adopted the name and form of plaintiff's product, but also claimed that its product was the original and by implication that the plaintiff's was an imitation. There could have been but one object for doing this, and that was, by unfair competition and untruthful statements, to deceive the public and secure the trade which in equity and good conscience belonged to the plaintiff. This equity will prevent by injunction.

In view of the fact that "Shredded Wheat" is the plaintiff's trade-name, that defendant deliberately started out to acquire by unfair competition and misstatements the trade which equitably belonged to the plaintiff, and that it is practically impossible for the defendant to use the name and form of plaintiff's biscuit to designate its product without confusion, deception of the public, and unfair competition with the plaintiff, a decree will be entered vacating our former decree and reversing the decree of the District Court with directions to the court to enter a decree enjoining the defendant from the use of the name "Shredded Wheat" as its trade-name and from advertising or offering for sale its product in the form and shape of plaintiff's biscuit in violation of its trade-mark; and with further directions to order an accounting for damages and profits.