**BRUE et al. v. J. RICH STEERS, Inc., et al.**

District Court, S. D. New York.

April 21, 1945.

Gay & Behrens, of New York City (Edward J. Behrens, of New York City, of counsel), for plaintiffs.

John F. X. McGohey, U. S. Atty., of New York City (Louis Mansdorf, Asst. U. S. Atty., of New York City, of counsel), for defendants.

GODDARD, District Judge.

Donoghue, one of the plaintiffs in this suit for overtime wages under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., has moved for summary judgment. The defendants are four contracting companies who were joint venturers on a contract with the United States to construct new dry docks at the Brooklyn Navy Yard. It is conceded that the plaintiffs were inspectors and do not come within the provisions of the Davis-Bacon Act, 40 U.S.C.A. § 276a, or of 40 U.S.C.A. §§ 324–326. The moving plaintiff has submitted affidavits describing his part in the construction work, and has also included pictures of the dry docks under construction.

The complaint alleges that the plaintiffs were the employees of the defendants; that the defendants were engaged in interstate and foreign commerce, and in the production of goods for interstate and foreign commerce, and that each of the plaintiffs, as an employee of the defendants, was engaged in the production of goods for

interstate and foreign commerce. The complaint goes on to allege that the plaintiffs were engaged in the construction of marine equipment, to wit—two dry docks in an arm of the East River; that the materials for the construction of the dry docks were brought to the site of the work by ships traveling in interstate commerce from Pennsylvania and New Jersey. The plaintiffs, while employed by the defendants, worked weeks of more than forty hours; that they were paid for their time over the forty hours at a rate less than time and a half. They are suing for the alleged balance due them, for an equal sum as liquidated damages, and for reasonable attorneys' fees, in accordance with the provisions of the Fair Labor Standards Act. 29 U.S.C.A. §§ 207, 216(b).

The answer of the defendants denies that the plaintiffs were employed by them, and in one affirmative defense alleges that the plaintiffs were employed by the government. It also denies that the plaintiffs were engaged in the production of goods for interstate commerce.

On this motion, the defendants have withdrawn all of their defenses, except the defense denying that the moving plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce and that the plaintiff was not covered by the Fair Labor Standards Act.

According to the affidavit and exhibits of the moving plaintiff, Donoghue, channels were first dredged out of the East River in the location of the proposed dry docks. Steel piles were sunk into the bottom of each channel and cut off to proper length. Steel forms were then brought by boat from New Jersey and placed underwater on the steel piles. Tremie boats were then brought to the site, and were used to chute tremie cement from the mixing plant ashore into the steel forms underwater. The last step of pouring the concrete into the forms under water was a difficult one and Donoghue's service consisted in watching and inspecting this operation. He had to see that the proper grade of concrete was sent down into the underwater forms, to see that the forms were evenly filled, and he had to see that the concrete was poured without any leaks—either of unwanted water into the forms, or of concrete out of the forms.

When the first dry dock was partially completed, Donoghue devoted part of his time to supervising the placing of the two-foot coat of concrete on that portion of the dry dock. Then he supervised the task of putting the fill-in around the dry dock so as to join the dry dock in with the rest of the Navy Yard. As soon as a section of the dry dock had been finished, the Navy started constructing a ship there.

Several reasons are urged in behalf of plaintiff in support of the contention that he was engaged in commerce (interstate) or in producing goods for commerce as defined in the Fair Labor Standards Act.

■■ It is apparently contended that as he was working on a float anchored in the East River—navigable waters—he was engaged in commerce. This would be relevant if the question of admiralty jurisdiction were involved. However, it is to be remembered that a seaman is expressly excluded from coverage under the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (3), and that it is not the location but the nature of plaintiff's occupation which is determinative. Anderson et al. v. Manhattan Lighterage Corporation, 2 Cir., 148 F. 2d 971. The decision turns not upon whether an employee's activities affect or indirectly relate to interstate commerce, but whether they are actually in or so closely related to the movement of commerce as to be a part of it. The character of the work of the employee is the decisive factor—not whether his employer was engaged in interstate commerce. McLeod v. Threlkeld et al., 319 U.S. 491, 63 S.Ct. 1248, 87 L. Ed. 1538.

■ It is further contended by plaintiff that he was engaged in the production of goods for interstate commerce as he was handling materials which had been shipped in interstate commerce, including steel forms, stone, sand, tremie cement and structural steel. This argument must be eliminated for these materials had passed into the actual physical possession of the ultimate consumer. See Fair Labor Standards Act, 29 U.S.C.A. § 203(i).

It is also argued in behalf of plaintiff that in helping to construct a dry dock to be used in the building of vessels for interstate commerce, he was engaged in the production of goods for interstate commerce. A completed dry dock when used for the building and repair of vessels may be so closely related to interstate commerce that its employees might be regarded as being engaged in interstate commerce. But a distinction must be made between the

original construction of a dry dock before it is erected and used and after it is erected. Barbe v. Cummins Construction Co., D.C., 49 F.Supp. 168, affirmed 4 Cir., 138 F.2d 667.

■■■ One employed as an inspector of concrete work in the original construction of a new building is not himself engaged in interstate commerce or in the production of goods which pass into interstate commerce, nor do his services directly relate to interstate commerce, although the building, when finished, is intended for use for the production of goods for interstate commerce. Noonan v. Fruco Const. Co., 8 Cir., 140 F.2d 633; Scott v. Ford, Bacon & Davis, D.C., 55 F.Supp. 982; Wells et al. v. Ford, Bacon & Davis, 7 Labor Cases, Par. 61,929, affirmed 6 Cir., 145 F.2d 240. See also Dollar v. Caddo River Lumber Company, D.C., 43 F.Supp. 882. Such is the interpretation by the Wage and Hour Division of the Department of Labor in Bulletin No. 5, Paragraph 12, which says that—"The question arises whether the employees of builders and contractors are entitled to the benefits of the Act. The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across state lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce. There may be particular employees of such construction contractors, however, who engage in the interstate transportation of materials or other forms of interstate commerce and are for that reason entitled to the benefits of the Act".

This administrative interpretation is entitled to great weight. United States v. American Trucking Associations, 310 U. S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Skidmore v. Swift & Co., 323 U.S. 134, 140, 64 S.Ct. 161; Callus v. 10 East Fortieth Street Building, 2 Cir., 146 F.2d 438.

■ The plaintiff urges that as he was engaged in constructing a dry dock on the river front, he was engaged in interstate commerce and cites in his support Walling v. Patton-Tulley Transportation Co., 6 Cir., 134 F.2d 945, 946, where it was held that employees working on the construction of dikes and revetments in the Missouri and Mississippi rivers were engaged in inter-state commerce; the court holding that these rivers were highways of interstate commerce and that "the purpose of the dike and revetment work is to direct and channelize the current of the river in order to prevent erosion and to maintain the minimum depth required by commercial navigation." In its decision the court applied the settled rule that a workman employed in the improvement or repair of an interstate highway is engaged in interstate commerce.

The facts in the case at bar distinguish it from Walling v. Patton-Tulley Transportation, for in the present case, while the structure fronts the river and extends into the river, it was not intended as an aid to commercial navigation; has no relation to river traffic; has no more effect on the current or flow than any building fronting on the river. The facts do not support a finding that the plaintiff was employed in improving or repairing an interstate highway.

My conclusion is that the plaintiff was not covered by the Fair Labor Standards Act, and his motion for summary judgment must be denied.

Motion denied. Settle order on notice.