### RITCH et al. v. PUGET SOUND BRIDGE & DREDGING CO., Inc., et al.

### No. 970.

District Court, W. D. Washington, N. D.

May 14, 1945.

Florence Mayne, of Seattle, Wash., for plaintiffs.

W. E. Evenson, Skeel, McKelvy, Henke, Evenson & Uhlman, and Robert F. Sandall, all of Seattle, Wash., and J. Charles Dennis, U. S. Atty., and Herbert O'Hare, Asst. U. S. Atty., both of Seattle, Wash., for defendants.

BOWEN, District Judge.

Both sides have most exhaustively presented this matter to the Court, both on the facts and the law.

■ Doubtless the fact is well appreciated by all that the Congress has power to deal with this subject only in so far as it relates to interstate commerce. In enacting the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., under which this action was brought, Congress was exercising that power given to it under the Commerce Clause of the Constitution to regulate interstate commerce; and unless plain-tiffs' work and that of their assignors affected interstate commerce, their claims for overtime work against defendant are not protected by the Fair Labor Standards Act.

So the right of these plaintiffs and their assignors involves the inquiry whether the new Navy dock structures they were constructing were to be instruments of commerce and whether or not any materials they were handling were handled by them as a part of the movement of those materials in interstate commerce.

Judge Goddard's decision in the case of Joseph A. Brue et al. v. J. Rich Steers, Inc., et al., 60 F.Supp. 668, decided recently in the Southern District of New York, is in its facts almost on all fours with the facts in the case at bar. Judge Goddard in that case has very carefully reasoned the matter out and stated the principles and law applicable to the situation, and I am unable to find any fault with anything he has said.

It is, of course, possible that the law as we now know it might later be changed. Congress might possibly declare more certainly an intention to make the Fair Labor Standards Act apply to such work as these employees were doing. Or conceivably the United States Supreme Court might change its view of the nature of the instrumentality being here built so as to include it in interstate commerce instrumentalities or so as to include as interstate commerce the services which these plaintiffs were performing in connection with the materials in question; but so far the Congress and the Supreme Court have taken no such action, and this Court at this time has to act in the light of the congressional and judicial authority now known to us.

■ I am convinced that the dock and dock structures which were being built by these plaintiffs as employees of the defendant were not instrumentalities of commerce, that they were intended only to be a Navy dock for the exclusive use of the United States Navy, and that such dock was not intended to be used by all commercial vessels which might wish to do so in the ordinary course of trade and commerce.

■ I entertain no doubt that the dock was not to be an instrumentality of commerce. I am convinced that the work done by the plaintiffs and their assignors in con-

672

nection with the materials which had previously moved in interstate commerce, all of which was done only after the materials came to rest on the premises of the Navy Department in Bremerton, after the materials had completed their movement in interstate commerce, does not affect, relate to, or constitute a part of, the movement in commerce of those materials. It is clear that these plaintiffs did nothing that had any causal connection with, or in any way affected, or related to, the movement in commerce of these materials. It is true that in certain ways they interested themselves in the materials. Some of the plaintiffs kept track of the materials to see where they went when they were put into the structures that were being built as a part of the dock. One of the plaintiffs or assignors kept a progress map showing the final disposition of the material in the course of construction, and there were various other services on the construction work done by various assignors with respect to those materials; but such work as was done by the plaintiff's assignors had no relation to and did not affect the movement of these materials in interstate commerce.

I am not aware of any present judicial authority which upon facts like these here upholds the plaintiffs' claims under the Fair Labor Standards Act, and the announced opinions of the Administrative Office of the Fair Labor Standards Act are against plaintiffs' contentions. The Congress has not expressly provided that the work that these men were doing shall be covered by the Act.

I think the case of Walling v. Patton-Tully Transportation Co., 6 Cir., 134 F.2d 945, is not in point because there it was clear that the facilities which were being constructed were facilities in aid of navigation and commerce along two navigable rivers upon which was hauled much of the nation's general interstate commerce. The facilities there being constructed by the employees claiming the protection of the Act were intended to directly aid the movement of interstate commerce; whereas, as I have previously observed, in the case at bar the dock structures were for the exclusive use of the United States Navy. They were not for general commerce or for any commerce except the use of the Navy.

There is no judicial precedent and there is no rational basis, sound in law, on which the Court could sustain the contention of the plaintiffs and their assignors in this case.

The question of uniformity among all these employees is, however, a very important thing, and if I had any doubt in the matter as to the legal right of the plaintiffs and their assignors to maintain this action, it certainly would be resolved in favor of them, because I feel all employees, irrespective of union membership or kind of work, whether manual, clerical or professional work, should be treated alike as far as this Act is concerned. I believe the question of uniformity in dealing with the employees in this kind of a case is a matter properly to be considered by the Court, and the Court has considered it, and I emphasize that if I felt that there was any doubt as to the facts or applicable legal principles, that doubt would certainly by the Court be resolved in favor of these plaintiffs and their assignors.