**GAYLE v. JONES et al.**
No. 1566.

District Court, W. D. Louisiana,
Shreveport Division.

Dec. 10, 1945.

Robert G. Chandler and Turner B. Morgan, both of Shreveport, La., for plaintiff.

Jas. W. Jones, of Natchetoches, La., and Simon Herold, W. W. McDonald, and Albert P. Garland, all of Shreveport, La., for defendants.

DAWKINS, District Judge.

Plaintiff, as trustee in bankruptcy of James William Jones, Jr., filed this action against the said bankrupt, his daughter,

Mrs. Ernestine Cook, J. D. Smith, a nephew, James Lee Jones, a foster son, Mrs. Elora E. Jones, wife of the bankrupt, the Rio Hondo Land Company, Inc., and the Saint Denis Securities Company, Inc., attacking certain transactions between the several parties affecting real property in the Parish of Natchitoches, La., as simulated and fraudulent, alleging that the said property was, in reality, that of the bankrupt, and had not been surrendered to the trustee. The petition set forth names and amounts due the several creditors, who had been listed on the schedules. Plaintiff prayed that as trustee of the bankrupt estate he be decreed the owner and entitled to the possession of the real estate and other physical property; and, in the alternative, that he be held the owner and entitled to the possession in his capacity as trustee of all the shares of stock of Saint Dennis Securities Company, Inc., in whose name the present record title of the property stands.

James W. Jones, Jr., the bankrupt (a practising attorney), of Natchitoches, La., was appointed curator ad hoc for his foster son, James Lee Jones, for the reason, it was alleged, the latter is presently in the Army of the United States.

On August 6, 1945, the defendants, James W. Jones, Jr., Mrs. Ernestine Cook, J. D. Smith, James Lee Jones, Mrs. Elora E. Jones, and the Rio Hondo Land Co., Inc., appeared through counsel, one of whom was the said James W. Jones, Jr., and moved to dismiss the complaint on the following grounds, to-wit:

(1) That the allegations of "fraud, mistake, simulation and sham * * * are untrue, and if true, which is specifically denied, are barred by the prescription of one, three and five years, and especially by Articles 1993, 1994 and 3519 of the Revised Civil Code of Louisiana."

(2) That upon its face the complaint shows that all the alleged acts, if committed, were done "more than six months next preceding the filing of bankrupt's petition * * * or specifically in the year of 1936, approximately seven and a half years before the filing of the bankruptcy petition, on the 23d day of August 1943."

(3) That all the creditors except the State of Louisiana and the Central Lumber Co., among those listed, "suffered more than one year to elapse from the date of obtaining judgment against the bankrupt"

before attacking the transactions in question, and are "therefore barred by the provisions of Article 1994 of the Revised Civil Code."

(4) That the claim of the State arose after the incorporation of the two defendant corporations and the acts complained of and is barred by Article 1993 of the Code; and that

(5) The present suit is a collateral attack upon the acts of the corporation which can be done only by direct action.

Subject to the motion to dismiss, defendant, James Lee Jones, filed a motion to stay this proceeding for the reason that he is in the Army, alleging that he is the "owner of a large percentage of the property involved, or the stock in the defendant corporations, and it would be highly prejudicial to his rights and interests, to hear and determine the legal rights and issues involved herein, in his absence, and without his right of employment of counsel of his own choice and himself as a witness in his own behalf." This motion was signed by James W. Jones, Jr., his foster father, as his attorney and not as curator. This, it would seem, makes him a party to the suit, the same as the other defendants.

The motions were heard, argued and submitted on October 19th, and thereafter briefs were filed, the last on November 5, 1945.

On November 7th, another document was filed on behalf of J. D. Smith, and James Lee Jones, by their attorney, James W. Jones, Jr., styled "Exception and Motion to Dismiss." It reiterates and elaborates the grounds of the former motion and, in addition, charges that the bill discloses that this court is without jurisdiction, since the trustee and defendants are all citizens of Louisiana. Further, that the bill fails to allege the many grounds which are the bases of the revocatory action under the State Code. This document consists of some nine pages and its allegations deal in many respects with matters on the merits, such as ordinarily would be a part of the answer. It, of course, has not been covered by the briefs, which were submitted before it was filed.

■ However, when the question of jurisdiction is raised, at whatever stage, unless it be of the person which can be waived, it becomes the duty of the court to determine it.

■ Sec. 110, T. 11 U.S.C.A., as amended by the Act of June 22, 1938, C. 575, Sec. 1, 52 Stat. 879, vests in the trustee power and authority to maintain this proceeding, either in this court or in the courts of the state. Said section, subsection c, among other things, declares: "The trustee, as to all property in the possession or under the control of the bankrupt at the date of ‘bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists; and, as to all other property, the trustee shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists."

The bill of complaint charges that all the transactions assailed were mere simulations, and that the title to the property involved still remains in the bankrupt, or if any conditions have arisen such as to create any rights in third persons as against the alleged alter ego corporations, then he, the trustee, should be decreed the owner and entitled to the possession of the corporate stock for the benefit of the general creditors of the bankrupt.

Paragraph (3) of subsection e of said section 110 of T. 11 provides: "For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

See numerous cases in the notes of this section in T. 11, Sec. 110, U.S.C.A., including the loose leaf supplement.

It follows that diversity of citizenship is not required and this court has jurisdiction to entertain this suit.

■ It appears from the record made upon the hearing that, although both defendants, J. D. Smith and James Lee Jones, are in the armed services, Smith has no present financial interest in the case and the transactions complained of took place mostly when Jones was a child. There is nothing to show that the presence of either is indispensable, except general statements. Jones, who, it is claimed, owns some of the stock, is now stationed at an army camp in the State of California, and if he is able to furnish testimony of importance, there seems to be no reason why it can not be taken by commission, or that he may not be able to obtain a few days leave from his duty, if necessary,. to attend the trial. It is important to proceed with the determination of this case in order that the bankruptcy proceedings may be concluded.

The motion will be denied.

### Plea of Prescription.

■ As to the plea of prescription it is well to note that this same subsection e of Sec. 110, T. 11, U.S.C.A., vests in the trustee title to all of bankrupt's property. Subsection e(1) provides: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor." In other words, if any of the creditors of the bankrupt in this case could, before bankruptcy, have assailed the transactions complained of by the trustee, then those remedies are open to him here.

The bill of complaint charges that the several acts by defendants purporting to convey title to the property involved "constitute a mask and simulation and a sham perpetrated for the purpose and with the view of concealing his (bankrupt's) property and placing of same beyond the reach of his creditors". The prayer is that it be declared to belong to the bankrupt and that it should be surrendered by him to the trustee; and, in the alternative, that he, the trustee, be decreed the owner and entitled to the possession of the certificates representing the entire capital stock of the Saint Denis Securities Co., Inc.

■ If the plaintiff is able to prove that the several transactions described in the bill are mere simulations, executed for the purpose of covering up the property and hiding it from the bankrupt's creditors, then the true title never passed out of him but remained at all times, including the date of filing the petition for voluntary adjudication, in the bankrupt. Such actions do not prescribe. Schalaida v. Gonzales, 174 La. 907, 142 So. 123; Lawson

v. McBride, 121 La. 282, 46 So. 312, and authorities cited in these decisions.

In Houghton v. Houghton, 165 La. 1019, 116 So. 493, 495, Benjamin Houghton, Sr., had died on June 1st, 1919. Plaintiffs, who were his children by his first marriage, had in 1914 obtained a judgment against him "for money expended by them for his account." After the death of plaintiff's mother in 1887, Houghton, Sr., had in 1890 married a second time. On January 10, 1896, he purchased two squares of ground in Slidell, La., which he afterwards transferred to Henry C. Cockburn. The date of this latter transfer is not stated in the opinion, but it expressed a consideration of $4,010 of which $10 was paid in cash, and a note for $4,000 payable one year after date executed by Cockburn to represent the credit portion of the purchase price. Prior to the sale to Cockburn plaintiff's father had recorded an act of donation to his second wife, defendant, Alice Erkson Houghton, covering the same property. Subsequently, on October 11, 1915, Cockburn deeded the property to Virginia Ritchie, a sister of the defendant, Alice Erkson Houghton, for an expressed consideration of $4,000, paid and to be paid.

Plaintiffs in that case had attacked both the transfers from their father to Cockburn and from the latter to Mrs. Ritchie as simulations.

The Supreme Court of Louisiana, after finding that both transfers from Benjamin Houghton to Cockburn and from the latter to Mrs. Ritchie "were mere simulations", said:

"A simulation is a feigned, pretended act; one which assumes the appearance without the reality. Being entirely without effect, it is held not to have existed, and, for that reason, it may be disregarded or attacked collaterally by any interested person. This rule is so well recognized that the citation of authority here would be superfluous.

\* \* \* \* \* \*

"Defendant pleads the prescription of one, three, five, ten, and thirty years. This plea was referred to the merits, but the judgment did not pass upon it except indirectly.

"The plea of prescription is based upon the theory that plaintiffs have brought a revocatory action herein, because, in their petition, they allege that the deeds they attack were simulated and fraudulent. It is fairly ascertainable from the petition that the word 'fraudulent' was used therein to emphasize their complaint that an attempt was made to disinherit them, first by an act of donation, then by simulated transfers of the aforesaid property, and, finally, by the will of their deceased father; and, as counsel for defendant correctly says in his brief:

" 'In a simulation there is no real title. It is a mere mask or sham. There is no consideration to support it, and it can be attacked collaterally.'

"The authorities hold that such a transaction may be ignored or attacked collaterally whenever the interest of another may be affected thereby. McAdam v. Soria, 31 La.Ann. 862; Hibernia Bank & Trust Co. v. Louisiana Ave. Realty Co., 143 La. 962, 79 So. 554."

A case similar in many respects to the present one is that of Hibernia Bank & Trust Co. v. Louisiana Avenue Realty Co., 143 La. 962, 79 So. 554. There plaintiff's debt, consisting of a judgment against James M. Dresser for $60,000, came into existence on September 17, 1911. Plaintiff charged that Dresser had, "for the purpose of defeating the just claims of his creditors, and particularly plaintiff, diverted all of his assets of every nature and kind into various alleged companies \* \* \*," which, "to the knowledge of all its organizers, stockholders, officers and directors, (was) a false and fraudulent corporation, \* \* \* simulated and fictitious," etc. Further, that on March 19, 1909, Dresser made a "fictitious sale" of the property to himself through J. M. Dresser Co.; that the latter, on November 30, 1910, made a similar fictitious sale to a named individual for purported shares of stock in the Louisiana Avenue Realty Co., and that on the same day this individual "pretended to sell" to the said Company, the same property for the identical shares of its stock; and that all these corporations and individuals were parties interposed, unreal, fictitious, and a sham, etc. Defendants pleaded misjoinder of parties and causes of action; and in the alternative, filed a motion to strike for vagueness, also exception of no cause of action, prescription and estoppel. All, except the plea of estoppel, were overruled by the lower court and the latter was referred to the merits. Defendant answered and the trial began, but before it was finished,

"the trial judge reversed his former ruling on the exceptions of no cause of action and no right of action and prescription, (and) maintained said exceptions * * *".

The Supreme Court, after reciting this condition of the case, proceeded to point out the difference between the revocatory action, upon which the pleas and exceptions in both that case and the present one are based, and the action en declaration de simulation. The following excerpts are quoted from that opinion, 79 So. at page 555:

"The jurisprudence of this state is settled that a creditor who believes that his debtor has disposed of his property with fraudulent intent, but who has not the means to find out with definite certainty whether his debtor has done so for a real consideration with the connivance of an accommodating purchaser, or has merely executed a paper title as a sham, and without any consideration whatever, may attack such a transaction in a single action by pleading his cause in the alternative.

" 'In the class of cases now under consideration, the widest latitude should be given them (the creditors) for they are necessarily, to a great degree, uninformed as to the precise relations existing between their debtor and his coadjutors in wrongdoing. Often they are compelled to strike in the dark. If the purchaser's title is an honest one it is better for him that the double test be applied, in one, instead of two suits.' Chaffe, Jr., v. Scheen, 34 La. Ann. 684.

"Considering, then, the exceptions of no right or cause of action and prescription as far as they apply to the first ground of action declared upon by plaintiff, namely, that the transfers, assignments, etc., made by its debtor, John M. Dresser, were real, and, while made for a consideration, are voidable because made in fraud of its (plaintiff's) rights, we find that the articles of the Civil Code are to the effect that such an action may only be maintained against an insolvent debtor; that the suit must be brought within one year of the commission of the fraud; that the fraud must have injured the creditor; and that the creditor's claim must have been in existence prior to the commission of the fraud. C.C. arts. 1971, 1987, 1993; Gugel v. Carson, 133 La. 89, 62 So. 485. But, according to the allegations in its peti-

tion, plaintiff's claim, giving it the benefit of the most favorable presumption, only came into existence on September 17, 1911, and the sales attacked are of date March 19, 1909, and November 30, 1910; and, according to the evidence in the record, its judgment against Dresser was obtained February 23, 1912, and this suit was only filed May 26, 1913. It therefore follows that, taking as true plaintiff's allegations that defendant was not insolvent, and that the alleged frauds were committed long prior to the creation of the indebtedness upon which it declares, and more than a year before the institution of the present suit, the exceptions of no cause of action and prescription were to that extent properly maintained.

"If we now consider the exceptions in so far as they affect plaintiff's secondly declared ground of action, namely, that the so-called sales and transfers are mere shams and simulations, it is evident that said exceptions are not sustainable under our law. A simulated contract is one which, though clothed in concrete form, has no existence in fact and is only a myth. It may at any time and at the demand of any party in interest be declared a sham, and it may even be ignored by creditors of the apparent vendor. Defendants do not controvert that proposition, but they say that plaintiff, having first alleged a real contract, which it charges to be voidable for fraud, cannot in the next breath, although in the alternative, charge that said contract is not real; in other words, that it is inconsistent to say that a contract is real, and in the alternative to say that it is not real. No authority or precedent is cited in support of defendants' contention, and plaintiff refers us to the case of Dilzell Engineering Co. v. Lehmann, 120 La. 279, 45 So. 138. In that case it was held that a petition which states the facts and draws therefrom alternate legal conclusions is not open to the objection of inconsistency. Conversely in the present case facts which in their very nature are unknown to the plaintiff are alleged in the alternative, but the same legal conclusion is drawn from them. As stated in the case of Chaffe, Jr. v. Scheen, hereinbefore quoted, the reason for permitting these alternative pleas lies in the fact that plaintiff is of necessity in the dark as to the truth. Wrongdoers, if they be such, are always careful to conceal the evidence of their real intentions."

486

In conclusion I am of the view that this is an action en declaration de simulation, and it makes no difference whether the plaintiff was or was not a creditor at the time of the alleged simulated transactions. Ideal Savings & Homestead Ass'n v. Gould, 163 La. 442, 112 So. 40. The theory of such a suit is that the property has at all times remained that of defendant and liable for his obligations whenever created. Cancellation of the simulated transfers leaves the property as if it had never passed out of his name.

For the reasons assigned the motion to dismiss and other pleas are overruled.

Proper decree should be presented.