**MILLS v. UNITED ASS'N OF JOURNEY-
MEN AND APPRENTICES OF PLUMB-
ING AND PIPE FITTING INDUSTRY OF
UNITED STATES AND CANADA et al.**

No. 818.

United States District Court
W. D. Missouri, Southern Division.

March 28, 1949.

Jo B. Gardner, of Monett, Mo., for plaintiff.

Flay E. Randle, of Springfield, Mo., for defendants Local 178 of United Ass'n, C. W. Verink, Jess Irwin, Merle Motz and Mike Boyle.

A. Norman Somers, Asst. General Counsel, National Labor Relation Board, of Washington, D. C., and Robert S. Fousek, Chief Law Officer, of Kansas City, Mo., for N. L. R. B.

DUNCAN, District Judge.

Plaintiff has instituted this suit in two counts under Title 29 U.S.C.A. §§ 185 and 187, a part of the Labor Management Relations Act, 1947, commonly referred to as the Taft-Hartley Act. In the first count, plaintiff sought an injunction, and in the second count he seeks damages, actual and punitive. The first count has been dismissed, so we are now concerned solely with the question of damages. The plaintiff alleges:

"Count One

"Complaint for Injunction

"I. Plaintiff states that he is a heating, plumbing, and air-conditioning contractor for residential and commercial building construction with his office and residence located at Monett, Missouri; that defendant United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada is the only labor organization within the United States and Canada charged with performing work in the pipe fitting trade and industry by the American Federation of Labor; said defendant has its offices in the Machinists Building in Washington, District of Columbia. Defendant United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local Number 178, represents and acts for the above-named defendant in Springfield, Missouri and vicinity which includes Bolivar, Missouri, and resides in Springfield, Missouri. Defendants C. W. Verink, Jess Irwin, Merle Motz, Lester Viles, and Mike Boyle comprise the executive board of said local union; all of said defendants reside

in Springfield, Missouri. Said defendants are labor organizations, or comprise labor organizations, operated by and composed of, employees; and such organizations exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work. Said defendant C. W. Verink is also the secretary and business agent of said defendant local union. Said defendant Lester Viles is also the president of said local union defendant. Defendants are engaged in an activity affecting commerce whereby they represent, and are, union journeymen plumbers engaged in assisting in building and construction work; and the buildings and construction on which they work are used, when completed, for the furtherance of interstate commerce and the free flow of commerce, and the materials and equipment with which said plumbers work move or have moved in such commerce.

"II. This court has jurisdiction of this action under sections 185 and 187 of Title 29, United States Code Annotated, which are sections of the 'Labor Management Relations Act, 1947' commonly known as the Taft-Hartley Law.

"III. Plaintiff, for cause of action, alleges as follows: Said defendant labor organizations, through their agents, representatives, servants, and employees have willfully and unlawfully conspired with certain plumbing, heating, and air-conditioning contractors in the city of Springfield, Missouri, three of whom are J. B. McCarty Plumbing and Heating Company; Bowman and Drussa Plumbing and Heating Company; and Springfield Plumbing Company, to violate said section 187 of the Taft-Hartley Law. The object of said conspiracy is to eliminate and stifle competition among plumbing, heating, and air-conditioning contractors other than those who are conspirators, to force builders to hire certain contractors and not to hire others and general contractors to hire certain heating, plumbing, and air-conditioning subcontractors and not others, to force certain employers to cease doing business with the public, to limit membership in defendant union, to limit the members of said union in their work and their right to work

by assigning them jobs principally with the conspirator contractors, to limit employment of union men in the building trades within the jurisdictional area of defendant local union; and as a result of said conspiracy and the overt acts thereunder have slowed down and affected the free movement of goods, materials, and equipment in commerce and interstate commerce, business and industrial expansion, the employment of union men in the building trades, and have hampered the building and improvement of homes and business buildings for veterans and other members of the public. Said conspiracy has as its purpose financial and pecuniary gain for at least some of the conspirators and is in utter disregard of the public interest. The citizens of Springfield and vicinity have, because of said conspiracy and the stifling of competitive bidding thereunder, been compelled to pay a lug or tribute in the form of excessive profits and prices to accomplish building construction where union labor is employed within the jurisdiction of the defendant local union.

"IV. Plaintiff, on the 18th day of March, 1948, entered into a plumbing subcontract with one Don Garbee of Springfield, Missouri, who is the general contractor for the construction of a Coca-Cola bottling plant at Bolivar, Missouri; and in connection therewith furnished a surety bond in the sum of $4,967.00 conditioned on the true performance of said contract. Plaintiff, in order to obtain said bond, agreed with the bonding company that he would reimburse them for any and all sums paid by them under the terms of said bond. Many of the building materials and much of the equipment for said plant were moved, or were to be moved, in interstate commerce; and said plant, after its completion, is to be used for the mixing and bottling of a bottled soft drink known as Coca-Cola. The materials for the finished bottled product and the means of distributing same are in part purchased and shipped from states other than Missouri and must be shipped across state lines to said plant before it can operate for the purpose and in the manner intended.

"V. After entering into said contract, plaintiff requested defendants to furnish union plumbers to work thereon. Defendants refused to furnish same, and then plaintiff hired two union plumbers from Carthage, Missouri. Said men were hired for the purpose of doing the plumbing work contracted by plaintiff at said plant and, after being hired, they entered upon performance of their duties thereat. Defendants, in pursuance to said conspiracy willfully and unlawfully ordered said union employees to strike against plaintiff and refuse to work for him; and on or about the 25th day of May, 1948 said employees did strike against plaintiff and have, since said date, failed and refused to work for him within the jurisdiction of defendant local union. Thereafter, plaintiff again requested that defendants furnish him union employees who were members of defendant unions, but defendants, in pursuance of said conspiracy, willfully and unlawfully boycotted plaintiff by refusing to furnish available union labor to complete the work under plaintiff's said contract or for any other purpose. The objects of said strike and boycott against plaintiff were and are to force him to cease doing business with the said Garbee, to prevent plaintiff from carrying out said contract, and to prevent plaintiff from having or obtaining any contracts in the future in the geographical area within the jurisdiction of defendant local union; and said objects will be carried out and accomplished unless said acts are restrained and enjoined.

"VI. Plaintiff desires to use only union labor on the plumbing work under said contract, and defendant unions are the only source of said labor. At the time said employees went on strike against plaintiff, no labor dispute of any kind existed between plaintiff and said employees or the defendants but, because of said strike and boycott, a labor dispute does now exist between plaintiff and each of the defendants. Said willful and wrongful strike and boycott have and will in the future restrict and hamper the flow of goods, materials, and supplies in interstate commerce; and, unless restrained, have and will cause plaintiff to cease doing business with said Garbee and with any other general contractor in the jurisdictional area of defendant union; and have and will, unless temporarily re-

strained without notice to the adverse parties, cause plaintiff immediate and irreparable injury, loss and damage before such notice can be served and a hearing had thereon.

"VII. Plaintiff has been injured and damaged in his business and property by reason of the aforesaid conspiracy and strike and boycott in pursuance thereto; and the said Garbee has demanded that plaintiff comply with said contract, which plaintiff wants to do, but is unable to do with the aid of union labor because of said acts of said defendants. The said Garbee will not permit, and plaintiff does not desire to use, non-union labor on said work because of prejudicing the completion thereof due to the policy of other trade unions employed on said job in refusing to work with non-union men.

"VIII. If defendants are permitted to continue said acts, plaintiff will suffer irreparable damage for which his remedy at law will be inadequate.

"Wherefore, plaintiff prays that defendants and each of them be enjoined and restrained from discriminating against him in the furnishing of competent union plumbers, from discriminating against him in favor of conspirator contractors in the furnishing of such labor, and be compelled to furnish such competent labor to plaintiff as he may request, so long as the furnishing thereof does not discriminate against any other employer, and for all costs of this action.

"Count Two

"Complaint for Damages

"I. Plaintiff realleges and restates all of the allegations of paragraphs I, II, III, IV, V, VI, and VII of the first count of plaintiff's petition as though fully set out herein.

"II. Plaintiff states that, as a direct result of said wrongful acts, he has been damaged in the sum of $2500 actual damages and $15,000 punitive damages.

"Wherefore, plaintiff prays judgment against the defendants and each of them in the amount of $2500 actual damages and $15,000 punitive damages, or a total sum of $17,500, and for all costs of this action."

On December 16, 1948, by leave of court, defendants, Local 178 and the individual defendants, filed their motion to dismiss both counts on the ground that "said complaint does not present any cause of action over which this court has jurisdiction under the Labor Management Relations Act." As heretofore stated, count 1 was dismissed by the plaintiff. In the brief and argument in support of the motion, defendants contend that the allegations of the petition do not constitute a cause of action under either Sections 185 or 187, supra, and also that the allegations as to the type of work being done by the plaintiff in the construction of the building at Bolivar was not within the definition of "commerce" under the Act, and for that reason the court is without jurisdiction.

The plaintiff has filed a motion to dismiss defendant's motion to dismiss, alleging that the matter is res judicata, two other motions to dismiss having been filed by defendants, and by the court overruled.

On August 14, 1948, the individual defendants filed a motion to dismiss, in which the jurisdiction of the court was challenged for the reasons heretofore stated. On the same day, Local 178 of the Union, also filed a motion to dismiss on the same grounds. A memorandum opinion entitled "Memorandum Opinion On the Several Motions for a More Definite Statement, and Motion to Dismiss" in which the court overruled all of said motions was filed September 8, 1948, D.C., 8 F.R.D. 300. This opinion dealt largely with the sufficiency of the allegations, rather than with their substance, and very obviously the question of whether or not the allegations of the complaint constituted a cause of action were not presented to and considered by the court in passing upon the questions of jurisdiction.

Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., specifically provides, in part:

"(2) * * * whenever it appears *by suggestion of the parties or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (Emphasis supplied.)

A lack of jurisdiction may be raised at any stage of the proceedings where it may

become apparent. Davis v. Shackleford, 8 Cir., 91 F.2d 148; Caesar v. Burgess et al., 10 Cir., 103 F.2d 503; Hackner et al. v. Guaranty Trust Co. etc., 2 Cir., 117 F.2d 95. In the Davis case, supra [91 F.2d 150], Judge Thomas of the Court of Appeals for the 8th Circuit, said:

"It is also true that the court may inquire into his jurisdiction on his own motion, or upon motion of any interested party.

" * * * want of jurisdiction may be raised in the federal court at any stage of the proceedings." United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263.

It may be raised by motion of the parties, by the court's own motion or by objection to the introduction of evidence in the trial court. Davis v. Shackleford, supra. The question of jurisdiction may also be raised for the first time on appeal. Caesar v. Burgess et al., supra. The district courts of the United States are courts of limited jurisdiction and only have such jurisdiction as is expressly conferred upon them by the Congress of the United States under its constitutional authority. Fisch v. General Motors, Corp., 6 Cir., 169 F.2d 266.

■ At whatever stage in the proceedings a lack of jurisdiction is apparent to the court, at that time it is the duty of the court to consider and pass upon its jurisdiction. Gayle v. Jones et al., D.C., 63 F.Supp. 481; Emmons v. Smitt et al., D.C., 58 F.Supp. 869, certiorari denied, 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446. Jurisdiction over the subject matter of a controversy is never res judicata. The law is well stated in Blossfield v. Pacific Tank & Pipe Co., D.C., 15 F.2d 889, 890, where the court states in a case where a prior motion to dismiss for the lack of jurisdiction was overruled, and a subsequent motion on the same grounds was sustained:

"Plaintiff argues that the earlier ruling has become the law of the case, and that it therefore may not be set aside. Were not the jurisdiction of the court in question, this must have been conceded. * * * It would be not only an extraordinary but a useless thing to permit the trial of a case which, on the allegations of the complaint, must be dismissed for want of jurisdiction at the close of the plaintiff's case; which, if not then dismissed, must be dismissed, on the court's own motion * * * at any time before entry of a final decree at which the lack of jurisdiction was suggested; and which, on appeal, would be dismissed, rather than reviewed, because of lack of jurisdiction."

So, in the light of the aforementioned opinions, the plaintiff's contention that the subject of jurisdiction has been once determined and is now conclusive, is without merit, and must be denied.

The section of the statute, that is, Section 187(a), supra, under which the action is brought provides:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is—

"(1) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or *to cease doing business with any other person.* * * * (Emphasis supplied.)

"(b) Whoever shall be injured in his business or property by reason of of any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

Plaintiff alleges that he is a subcontractor; that he has entered into a contract with the principal or prime contractor for the construction of the building described in the complaint; that he has executed a bond for the faithful performance of his duties thereunder; and that he is respon-

sible for the carrying out of the agreement, both to the principal contractor and to the surety on the bond. He further alleges, in substance, that the local refused to supply plumbers to carry out his contract; this they had a right to do because the law does not place a penalty upon the union or an individual for refusing to work or to supply employees. Upon the refusal of the local to provide plumbers he procured union plumbers through another local, and alleges that the defendants caused these plumbers to strike because of his contract with the principal contractor. The specific allegations are that the object of the conspiracy is to eliminate and stifle competition among plumbing, heating, and air-conditioning contractors, other than those who are conspirators, and to force builders to hire certain contractors and not to hire others, and general contractors to hire certain heating, plumbing and air-conditioning subcontractors and not others.

There is no allegation in the complaint that the strike was called, or that the parties refused to work because of the refusal of the plaintiff to join any employer's organization. Under the allegations of the complaint it is very apparent that there was not a secondary boycott. There is no allegation that the strike was caused to force or to prevent the using, selling, handling, transporting or otherwise dealing in the products of any other processor, producer or manufacturer. If there is any cause of action alleged, it must be found in the words *"or to cease doing business with any other person"*, and in that connection it will be necessary to determine what is meant, under the Act, by "doing business". The allegations of the complaint, which must be taken as true, state that the strike was called or engaged in because the employer was associated with or had contracted with an individual or a group who were obnoxious to the organized labor group. It is not a question of striking to force the employer to join any group; the absolute reverse is apparent from the pleadings. The term "doing business" has not been construed by the appellate courts, so far as I can find, in connection with the Taft-Hartley Act. The question was before the district court for the Southern District of New York on January 26, 1948, in Douds v. Metropolitan Federation of Architects etc., D.C., 75 F.Supp. 672. Judge Rifkind discussed the question of principal and subcontractor in that case, and held that the parties were "allies"; that this relationship was brought about by the working conditions growing out of their contract and he refused to determine whether or not the relationship of principal and subcontractor would of itself create the status of ally in such manner as to take it out of the classification of parties "doing business" with each other. The other instances in which the term "doing business" has been construed are not sufficiently clear, nor for the most part in point, to be of benefit in this case. In view of the Congressional History of the Act, and the debates in the Senate, it would seem that the relationship between a principal and a subcontractor arising out of the awarding of a subcontract would not within the meaning of the Act be "doing business" as between the parties. If that were true, it could easily result in a subterfuge and would enable a principal contractor, whose relations with labor and with employees were unfavorable, to hide behind a more favorable relationship of a sub-contractor. As said by Judge Rifkind, in the Douds case, supra, it is my view that the words "or to cease doing business with any other person" have reference to that which precedes it and must be construed in connection with the question of secondary boycott. It is simply another definition or a further spelling out of the definition of what is necessary to create a secondary boycott. It means "doing business" as we ordinarily understand it between parties other than those to the particular contract or their allies. For that reason, it is my view that the complaint does not allege a cause of action under section 187, supra.

We then come to the question of whether or not, under the allegations of the complaint, the parties were engaged in commerce within the meaning of the Act. As defined by the Act, Section 152(6) (7):

"(6) The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, * * *.

246

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

The plaintiff alleges that in the building upon which he had agreed to perform certain work, many of the building materials and much of the equipment for said plant were moved, or were to be moved, in interstate commerce and that said plant, after its completion, is to be used for the mixing and bottling of a bottled soft drink known as Coca Cola. The materials for the finished bottled product and the means of distributing same are in part purchased and shipped across state lines other than those of Missouri and must be shipped across state lines to said plant before it can operate for the purpose and in the manner intended. While I find no case construing the term "commerce" as defined in the Taft-Hartley Act, without exception the courts, as well as the administrative agencies, have held that the Fair Labor Standards Act does not apply to local construction. The cases are numerous and a few of them will be noted here but not discussed. Barbe v. Cummins Construction Corp., D.C.1943, 49 F.Supp. 168; Brue et al v. J. Rick Steers, Inc., et al., D.C.1945, 60 F.Supp. 668; Ritch et al. v. Puget Sound Bridge & Dredging Co., Inc., et al., D.C., 60 F.Supp. 670; Scott v. Ford, Bacon & Davis, Inc., D.C., 55 F.Supp. 982.

In the Barbe case, supra [49 F.Supp. 171], the court cited with approval the following interpretation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., found in Interpretative Bulletin No. 5, October 1940, page 7, Paragraph 12:

"The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across State lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce."

This interpretation of the Fair Labor Standards Act has been followed almost universally by the courts. The building at Bolivar which was admittedly constructed for the bottling and sale of Coca Cola was purely a local project. The plaintiff has cited and discussed numerous cases in which custodial employees of a building were held to be engaged in commerce so as to be under the Fair Labor Standards Act. I think those cases, of course, are distinguishable from the facts we have here. In those cases the buildings were completed and were being used by tenants who were engaged in interstate commerce; but until a building is completed and actually becomes a part of, or contributes something to, commerce, those who are employed upon it are not engaged in commerce. In this connection Judge Collet of the Court of Appeals for the Eighth Circuit, when a Judge on the District Court, said in Noonan et al. v. Fruco Construction Co., 50 F.Supp. 432:

"I am unable to bring myself to the conclusion that a guard employed to protect the premises upon which a building is being constructed is 'engaged in commerce or in the production of goods for commerce' within the meaning of the Act in question." (Fair Labor Standards Act.)

There is nothing in the legislative history of the Labor Management Act 1947 nor in the language of the definition of "commerce" in the Act that indicates that Congress had any intention of placing any different construction upon the definition of commerce than that of any other Act where the term is used.

The persons employed on the structure at Bolivar, Missouri, were engaged in purely local construction work, and were not engaged in commerce or in producing goods for commerce within the meaning of the Act, and the court is without jurisdiction. The motion to dismiss must be sustained.

It is so ordered.