**KON–TEMPO FURNITURE, Inc.,**
Plaintiff,

v.

**Ernest KESSLER, as President, and Frank Marino, as Secretary-Treasurer of Upholsterers & Spring Makers Union, Local 76, affiliated with United Furniture Workers of America, A. F. of L.-C.I.O., Defendants.**

Civ. No. 16909.

United States District Court
E. D. New York.

Sept. 28, 1956.

Murray A. Frank, Brooklyn, N. Y., for plaintiff.

Weinstock & Tauber, New York City, for defendants, Schlesinger & Bloom, New York City, of counsel.

GALSTON, District Judge.

This is an order to show cause by the plaintiff to remand the action to the Supreme Court of the State of New York for the County of Nassau.

Plaintiff, Kon-Tempo Furniture, Inc. (hereinafter referred to as "Kon-Tempo"), instituted action by service of summons and complaint in the Supreme Court of the State of New York, Nassau County, against defendants, Upholsterers & Spring Makers Union, Local 76, affiliated with United Furniture Workers of America, A.F. of L.-C.I.O., and Ernest Kessler and Frank Marino as officers of said union. The complaint alleges that Kon-Tempo is a New York corporation, having its principal place of business in Hicksville, New York, and that it is engaged in the manufacture and sale of furniture. It also alleges that all of Kon-Tempo's employees are members of United Brotherhood of Carpenters & Joiners of America, Local 1327 (also referred to in papers annexed to the complaint as "Local 3127"), A.F. of L.-C.I.O., and that, after negotiations, Kon-Tempo entered into a collective bargaining agreement with "Local 1327" covering all its employees.

The complaint further alleges:

"10. On the morning of August 29th, 1956, defendant union Local 76 maliciously, and in violation of law, started to picket plaintiff's premises with two pickets, and on September 4th, 1956, with six pickets, who carried large and prominent placards bearing the following legend:

" 'We want our jobs back. We were locked out by Urban Furniture, which is Kon-Tempo under a new name. Help us win back our new jobs—Local 76, A.F. of L.-C.I. O.'

and have picketed plaintiff's premises from 8:00 A.M. of that day until 6:00 P.M., and have threatened to continue such picketing indefinitely."

Paragraph 15 of the complaint then alleges:

"In furtherance of the 'strike' and the picketing aforesaid, defendant union Local 76 has maliciously, illegally and without just cause, committed and threatened to continue to commit, the following acts:

"(a) It has placed pickets in front of plaintiff's place of business.

"(b) It has induced various customers of plaintiff not to enter plaintiff's place of business.

"(c) It has prevented various truckers from making deliveries of merchandise to plaintiff's place of business.

"(d) It has picketed in groups, barring the ingress to and egress from plaintiff's place of business.

"(e) It has caused its pickets to shout to plaintiff's customers and passers-by, among other things, that a 'strike' was in progress, and beseeching the public not to patronize plaintiff; and

"(f) It has caused false and fraudulent picket signs to be carried by the pickets aforesaid to mislead the public into believing that a labor dispute exists between plaintiff and defendant union."

The complaint further alleges, in paragraph 16, as follows:

"16. The foregoing illegal acts committed by defendant union Local 76, which it threatens to continue indefinitely, were and are for the purpose of unlawfully compelling plaintiff to recognize it as the sole and exclusive bargaining agent of plaintiff's employees who are now covered by the collective bargaining agreement presently existing between plaintiff and Local 1327."

The complaint then alleges (para. 17) that the acts committed by defendants as set forth in the complaint are illegal and are unlawful under the Labor Management Relations Act of 1947, as well as under the Constitution and laws of New York. It further alleges (para. 18) that it would be unlawful for Kon-Tempo to recognize the defendant union as the exclusive bargaining agent for Kon-Tempo's employees in the "absence of any certification by the National Labor Relations Board." It also sets forth (para. 19) that if Kon-Tempo were to yield to defendants' demands, "plaintiff would be forced to commit an illegal act and would subject itself to an unfair labor practice charge under the Taft-Hartley Law," and that plaintiff will suffer substantial and irreparable injury unless the relief sought by it is granted.

In its prayer for relief, the complaint asks for an injunction against defendants and "that plaintiff recover from the defendant such damages as plaintiff at the trial of this action will be able to establish."

On September 14, 1956, the defendants filed in this court the requisite petition and bond to effect removal of the action to this court. By order to show cause, dated September 17, 1956, Kon-Tempo moved to remand the action to the state court on the following grounds:

"1. This suit does not arise under the constitution or laws of the United States.

"2. No Federal question is made or presented by the complaint so as to entitle the defendants or either of them to remove this cause to this court.

"3. This suit does not involve a controversy or dispute properly within the jurisdiction of this court.

"4. The cause was improperly removed, and for such other, further and different relief as to the court may seem just and proper."

Section 1441(b) of Title 28, U.S.C.A., provides, in part, as follows:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

It is fundamental, therefore, that it be determined at the outset whether the complaint alleges a cause of action of which this court has original jurisdiction, "founded on a claim or right arising under the Constitution, treaties or laws of the United States."

The plaintiff contends in its affidavit in support of its motion to remand that it is not engaged in interstate commerce,

and consequently that the provisions of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., Taft-Hartley Law, are not applicable to the controversy set forth in its complaint, so that there is no original jurisdiction in this court founded on a claim arising under the laws of the United States.

Whether a case is one arising under a law of the United States, for purposes of determining original jurisdiction under the United States Judicial Code, 28 U.S.C.A., must be determined from what necessarily appears in the complaint. Taylor v. Anderson, 234 U.S. 74, 75, 34 S.Ct. 724, 58 L.Ed. 1218. As noted herein, the allegations of the complaint, in paragraphs 17, 18 and 19, state that the acts of defendants from which plaintiff seeks relief will subject plaintiff to the provisions of the Labor Management Relations Act of 1947. It is the contention of the plaintiff that those allegations in themselves are not sufficient to give this court original jurisdiction; and the complaint is silent as to whether the plaintiff is engaged in interstate commerce.

The defendants, in opposing the motion to remand, do not contend that this court has original jurisdiction founded on a claim arising under the laws of the United States for injunctive relief. In support of their contention that removal to this court was proper, they argue that the complaint alleges a cause of action for money damages under section 303(a) of the Taft-Hartley Law, 29 U.S.C.A. § 187(a) over which this court has original jurisdiction. Defendants refer to paragraphs 10, 11, 12 and 15(a) of the complaint, which allege that defendants are picketing Kon-Tempo's place of business. Paragraph 15(c) is then referred to as alleging that by reason of such picketing of plaintiff's place of business, various truckers have been prevented from making deliveries of merchandise to plaintiff's place of business. Defendants construe this to mean that employees of truckers of various companies were so prevented. Finally, defendants allude to paragraphs 9, 16

and 18 of the complaint as alleging that the purpose of the picketing was to compel Kon-Tempo to recognize Local 76, the defendant union, as the sole and exclusive bargaining agent of Kon-Tempo's employees, although that union has not been certified as such by the National Labor Relations Board. It is contended that the allegations contained in the foregoing paragraphs thus spell out a cause of action under the following provisions of section 303(a) of the Taft-Hartley Law:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is * * *

* * * * * *

"(2) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title." 29 U.S.C.A. § 187(a).

Section 303(b) of the Taft-Hartley Law provides, in part, as follows:

"Whoever shall be injured in his business or property by reason [of] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy * * *." 29 U.S.C.A. § 187(b).

Therefore, defendants argue, this court has original jurisdiction, and removal being proper, the application to

remand to the state courts must be denied.

The quoted provisions of Section 303 (a) of the Taft-Hartley Law, upon which defendants rely describe an unfair labor practice which is commonly known as a secondary boycott. Defendants recognize this, as their petition for removal of the case to this court, in paragraph 9, states as follows:

"The allegations of the complaint referred to above in Paragraph '7' of this petition, seek to spell out an illegal secondary boycott, which, under Section 303(a) of the Labor Management Relations Act of 1947, gives rise to a Civil action for damages * * *."

■ A secondary boycott exists " * * * when a labor organization having a labor dispute with employer A induces or encourages employees of employer B, with whom the union has no dispute, to refuse to handle goods or perform services for employer B, with the object of causing B to cease doing business with A, the employer with whom the union is involved in a labor dispute." Douds on Behalf of N. L. R. B. v. Sheet Metal Workers International Ass'n, Local Union No. 28, D.C., 101 F.Supp. 273, 277.

As it was stated in Douds on Behalf of N. L. R. B. v. Sheet Metal Workers, etc., supra, at page 278,

"Implicit in the idea of a secondary boycott is the fact that there is a labor dispute between a labor organization and an employer, and that the boycott charged is directed against another employer who is neutral to the dispute."

■ What is declared unlawful by section 303(a), therefore, is for a labor union to induce the employees of a neutral employer to engage in a strike or concerted refusal to work for the neutral employer in order to compel such employer to cease doing business with the employer against whom the labor union

has a labor dispute; thus enabling the union to bring pressure indirectly upon the employer with whom it is having a labor dispute through another employer who is neutral in the dispute. See L. Fatato, Inc., v. Beer Drivers Local Union 24, etc., D.C., 93 F.Supp. 481.

■ The allegations of the complaint relied upon by defendants to spell out a secondary boycott fall far short of indicating any "strike or concerted refusal" by employees to work for their own employer. The allegations in question aver that defendants are picketing plaintiff's place of business and that such picketing has prevented various truckers from delivering merchandise to plaintiff's place of business. At most, these allegations aver a refusal of truckers to cross a labor picket line. Such an averment in itself does not describe a secondary boycott within the meaning of section 303(a) of the Taft-Hartley Law.

Defendants rely upon Direct Transit Lines v. Local Union 406, International Brotherhood of Teamsters, etc., 6 Cir., 1952, 199 F.2d 89. In Direct Transit Lines, Inc., v. Starr, 6 Cir., 1955, 219 F.2d 699, the Court of Appeals, in a per curiam opinion, questioned the soundness of its earlier decision in 199 F.2d 89.

Section 101(b) of the Labor Management Relations Act, 29 U.S.C.A. § 158 (b) provides as follows:

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) To restrain or coerce (A) * * * or (B) an employer in the selection of his representatives for the purposes of collective bargaining".

■ In substance, it would appear that the complaint herein alleges that defendants are trying to coerce plaintiff in the manner declared unlawful by the foregoing statute, as quoted above. Under the Act in question, however, original jurisdiction to conduct hearings and to prevent such unfair labor practic-

es is placed in the hands of the National Labor Relations Board and not in the District Court. Congress has vested such powers in the Board under section 101 of the Labor Management Relations Act, 29 U.S.C.A. § 160. See Weber v. Annheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600; Direct Transit Lines, Inc., v. Starr, supra.

In view of the foregoing, the petition for remand is granted. Settle order.