**Laurence D. HAUGHTON and Maude Haughton, Copartners, doing business under the Name and Style of Elk Creek Logging Company, Plaintiffs,**

v.

**INTERNATIONAL WOODWORKERS OF AMERICA (AFL–CIO) et al., Defendants.**

**Civ. No. 9854.**

United States District Court
D. Oregon.

Dec. 12, 1958.

Hart, Spencer, McCulloch, Rockwood & Davies, and Gray & Lister, Portland, Or., for plaintiffs.

George & Conway, Harry George Jr., Portland, Or., for defendants.

EAST, District Judge.

Plaintiffs (Elk Creek) in this cause have instituted this action under Sec. 303(b) of the Labor Management Relations Act, 1947, as amended, hereafter called the "Act," 29 U.S.C.A. 187(b) [1] alleging that the Defendants are engaged in a strike forbidden by Sec. 303(a) (1) of the Act, which provides in part:

"(a) It shall be unlawful * * in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike * *, where an object thereof is—

"(1) forcing or requiring any employer * * * to cease doing business with any other person." 29 U.S.C.A. § 187(a).

---

[1] "Sec. 303.

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefore (sic) in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

Elk Creek owns and operates a logging operation in the State of Oregon.

Defendant Local Union 5–40, International Woodworkers of America (Local), and Defendant Columbia River District Council No. 5 (Council) are labor organizations within the provisions of the Labor Management Relations Act, 1947. 29 U.S.C.A. § 141 et seq.

This action against International Woodworkers of America (AFL-CIO), has been voluntarily dismissed.

Elk Creek is a private logging contractor who by bid offers its services to timber owners to log and transport obtained logs to appropriate mills for lumber products. For some 12 years prior to May 12, 1958, Elk Creek had a collective bargaining agreement with Local. Sometime during the year 1953, Elk Creek entered into a separate agreement called a "Truck Seniority Agreement" with Local, whereby a formula was agreed upon as to what trucks and drivers Elk Creek would employ to transport the logs. Under this agreement Elk Creek leased log trucks from independent operators, but supplied its own drivers. Drivers and trucks worked under this Agreement until May 7, 1958. On or about May 1, 1958, Elk Creek entered into an oral contract, later reduced to writing on June 10, 1958, whereby one Carignan was to transport Elk Creek's logs on an independent-contractor basis. Commencing on May 12, 1958, Carignan, as per his agreement with Elk Creek, began hauling all of Elk Creek's logs. This resulted in a dismissal of many of the trucks and drivers who had worked for Elk Creek under the "Truck Seniority Agreement." On May 19, 1958, pickets appeared and a strike occurred at Elk Creek's logging operation, the dispute arising between Local and Elk Creek over the alleged violation of the "Truck Seniority Agreement."

Local contends that Elk Creek unilaterally created the situation that resulted in the strike by breaching the existing labor contract between the parties. Local specifies two reasons for the breach, being a failure to follow the contract with regard to:

(1) Truck and truck driver seniority; and

(2) Subcontracting only with subcontractors having bargaining agreements with Local.

█ This Court finds that there was a valid contract binding the parties involved to follow the formula controlling truck drivers and truck seniority and that this formula had been closely adhered to by both parties since its inception in 1953. But this contract does not bind this Court to find that Elk Creek is guilty of unfair practices by refusing to follow the formula and instead hiring an independent contractor. A collective bargaining agreement is not a guarantee of continued employment for employees unless it clearly and unequivocally so provides. Sloan v. Journal Publishing Co., Or.1958, 324 P.2d 449.

█ The contract between Elk Creek and Local contained no specific provision binding Elk Creek to indefinitely follow the "Truck Seniority Agreement." This Court adheres to the reasoning of Dairy Workers v. Detroit Creamery Co., 38 Labor Relations Reference Manual 2303, 2304, where the Court said:

"The mere signing of a collective bargaining agreement does not deprive the company of its normal rights of management, and no intention to yield or impair such inherent managerial functions, including the right to subcontract, can be implied by such signing. Management may, if it chooses, restrict its freedom of action in this field, but its intention to yield its inherent prerogatives must be found in the agreement."

However, it does not follow that an employer may indiscriminately disregard his contract with the bargaining union, but if management acts in good faith and for a legitimate business purpose, changes in operating procedures are not violative of the Act. Sloan v. Journal Publishing Co., supra. This Court is satisfied that Elk Creek's abandonment

of the "Truck Seniority Agreement" rested on sound business reasons.

██ Local has argued extensively the question of whether Carignan was in fact an independent contractor and has presented to this Court some 36 different criteria to show Carignan is performing exactly the same work in the same manner as was done prior to May 7, 1958,[2] by the union-member truck owners and drivers who were discharged on said date. Local contends that Carignan is not a true independent contractor and that Carignan's work is so interdependent upon, and highly integrated into, Elk Creek's operation that Elk Creek is merely conducting a "straight line" and/or "ally" operation within the framework set down by Douds v. Metropolitan Federation of Architects, Engineers, Chemists & Technicians, Local 231, D.C. 1948, 75 F.Supp. 672 and related cases; N. L. R. B. v. Business Mach. and Office Appliances, Mechanics Conference Board, Local 459, 2 Cir., 1955, 228 F.2d 553; N. L. R. B. v. Truck Drivers & Helpers Local Union 728, 5 Cir., 1956, 228 F.2d 791; H. N. Thayer Co. v. Binnall, D.C. 1949, 82 F.Supp. 566; Mills v. United Ass'n of Journeymen and Apprentices of Plumbers and Pipe Fitting Industry of United States and Canada, D.C.1949, 83 F.Supp. 240, and therefore Carignan is not "another person" within the meaning of Sec. 303(a) (1) of the Act. 29 U.S.C.A. § 187(a) (1). This Court finds that the rationale of these cases inapplicable to the situation present here. Oregon's primary industry being the lumber industry, this Court will take judicial notice of the fact that the customary way of doing business in the logging industry is by subcontract as here involved, and the inherent nature of the industry prohibits entirely segregated action by the interested parties. Mere cooperation between a contractor and the principal does not preclude the existence of an independent contractor relationship. N. L. R. B. v. Denver Building and Construction Trades Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284, 1285.

██ Local's second primary contention is that Elk Creek breached the existing labor contract between the parties by failing to subcontract only with a contractor having an existing labor agreement with Local. This contention centers around the terms of Article 8, Paragraph 2 of the Working Agreement between Elk Creek and Local, dated October 28, 1957. This paragraph is set out in the margin.[3]

Carignan, the independent contractor, although a union member, has no existing labor agreement with Local. By a careful reading of said paragraph, it is evident that the term "bona fide contract" has no application to the log-hauling contract between Elk Creek and Carignan. Taken in context with the Agreement as a whole, this reference is limited to the operation of falling the timber and not the transportation of the logs. The contract between Elk Creek and Local being so limited, the subsequent contract between Elk Creek and Carignan must be held valid in that regard.

██ In this action, Elk Creek bases its complaint upon a violation of Sec. 303(a) (1) of the Act, 29 U.S.C.A. § 187. The counterpart of Sec. 303(a) is contained in Sec. 8(b) (4) (A) of the Act, as amended, 29 U.S.C.A. § 158, describing such procedure as an unfair labor

2. The date Carignan began working for Elk Creek under the oral agreement of May 1, 1958.

3. "Each and every employee in the employ of the employer, except fallers and buckers when working on a bushel basis, shall receive an hourly rate of pay. This provision shall in no way be construed to mean that a bona fide contract cannot be entered into. 'Bona fide contract' shall mean the employer may contract for logging any specified area of his operation. The employer agrees that he will include a clause in any such 'bona fide' contract to the effect that the contractor shall enter into a union agreement with the Union, containing the same provisions as this agreement."

practice on the part of a labor organization. Section 303 was enacted to give the injured party the right to sue for damages without waiting for, or resorting to, administrative proceedings. International Longshoremen & Warehousemen Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275. Section 303(b) of the Act has given the district courts general jurisdiction over unfair labor practices enumerated in Sec. 303, as distinct from the exclusive jurisdiction of the N. L. R. B. concerning matters contained in Sec. 8 of the Act. The previous courts which have considered Sec. 303(a) have not distinguished it from Sec. 8(b) (4) in regard to facts giving rise to the specified relief. International Longshoremen & Warehousemen Union v. Juneau Spruce Corp., supra; United Brick & Clay Workers of America v. Deena Artware, Inc., 6 Cir., 198 F.2d 637; Tungsten Mining Corp. v. District 50, United Mine Workers of America, 4 Cir., 242 F.2d 84; Pepper & Potter, Inc. v. Local 977 United Auto Workers C. I. O., D.C., 103 F.Supp. 684; Haspel v. Bonnaz, Singer & Hand Embroiderers, Tuckers, Stitchers & Pleaters Union Local 66, D.C., 112 F.Supp. 944; Bethlehem Steel Co. v. Industrial Union of Marine & Shipbuilding Workers of America, C. I. O., D.C., 115 F.Supp. 231; Kon-Tempo Furniture, Inc. v. Kessler, D.C., 145 F.Supp. 341. The only distinction made between the above sections concerns the type of relief the appropriate body may grant. Longshoremen v. Juneau Spruce, supra. For this reason this Court will apply the same test to determine liability of Local under Sec. 303(a) (1) as this Circuit applied in interpreting Sec. 8(b) (4) (A) of the Act. To find a violation of the statute there must be two necessary requirements. They are:

(1) Independent neutral employers; and

(2) The union must have as an object of its picketing the inducement or encouragement of the neutral employer to breach his contractual obligations or cease doing business with the primary employer then in a labor dispute between a bargaining agent and a primary employer. Retail Fruit & Vegetable Clerks Union, Local 1017, Retail Clerks Intern. Ass'n A.F.L.-C.I.O. v. N. L. R. B., 9 Cir., 249 F.2d 591.

This Court has already considered the question of whether Elk Creek and Carignan are independent neutral employers and has found in the affirmative. As to the second requirement, this Court finds that Elk Creek fails to establish facts which constitute a violation of the "Act." The current dispute arose over Elk Creek's determination to discharge its employee truck drivers and release the trucks under hire. This act alone brought about the appearance of pickets at Elk Creek's operation. Elk Creek's employees refused to work because of the discharge of their fellow union members, and not because of any labor dispute between Local and the secondary employer, Carignan. This Court recognizes that the picket line itself may be enough to encourage the neutral employees to refuse to work for their neutral employer, so that the neutral employer will cease doing business with the primary employer, but this is the indirect effect of any strike, and unless this Court can find substantial concerted activity between the striking union and neutral employees, relief is not available under Sec. 303 of the Act. Retail Fruit & Vegetable Clerks Union, Local 1017, v. N. L. R. B., supra. The Supreme Court, in N. L. R. B. v. International Rice Milling Co., Inc., 1951, 341 U.S. 665, 71 S.Ct. 961, 965, 95 L.Ed. 1277, said:

"That Congress did not seek, by § 8(b) (4) (to which this Court analogizes Sec. 303) to interfere with the ordinary strike."

Although not raised by either party, this Court has considered Sec. 303(a) (1) as being directed toward objectives of concerted activity, and not the mere location of union activities, as dictated by.

Retail Fruit & Vegetable Clerks Union, Local 1017 v. N. L. R. B., supra, in arriving at its determination that Elk Creek has failed to show action by concerted conduct by the employees of the neutral employer.

The United States Supreme Court, in considering Sec. 8(b) (4) (A), states its purpose is:

" * * * aimed to restrict the area of industrial conflict insofar as this could be achieved by prohibiting the most obvious, widespread, and, as Congress evidently judged, dangerous practice of unions to widen that conflict." Local 1976, United Brotherhood of Carpenters and Joiners of America, A. F. L., v. N. L. R. B., 357 U.S. 93, 78 S.Ct. 1011, 1017, 2 L.Ed.2d 1186.

From the testimony in this cause this Court finds no concerted attempt to widen the area of conflict beyond that which necessarily follows from a strike against the primary employer.

This Court is convinced that Council joined with, condoned, aided and advanced through its advices to Union members the strike cause of Local and shares with Local any responsibility for the strike against the primary employer.

It follows, therefore, that, so far as this cause is concerned, neither Local nor Council have or are now conducting a "secondary boycott" against Elk Creek within the meaning and as prohibited by Sec. 303(a) (1) of the aforesaid Act of Congress governing the labor-management relations involved in this cause.

Therefore, it is the opinion of this Court that Plaintiffs' complaint for relief under Sec. 303(b) of the Labor Management Relations Act, 1947, as amended, and its cause herein, should each be denied and dismissed respectively.

Counsel for Local and Council are requested to submit appropriate order in conformity with this Opinion.