**HYATT CHALET MOTELS, INC., a California corporation, Robert W. Winter, Jr. and Katherina Winter, Plaintiffs,**

v.

**SALEM BUILDING & CONSTRUCTION TRADES COUNCIL, Defendant.**

**REIMANN CONSTRUCTION CO., an Oregon corporation, Plaintiff,**

v.

**SALEM BUILDING & CONSTRUCTION TRADES COUNCIL, Defendant.**

Civ. Nos. 65–573, 65–574.

United States District Court
D. Oregon.

Oct. 22, 1968.

Lewis K. Scott, McColloch, Dezendorf & Spears, Portland, Or., for plaintiffs.

Donald S. Richardson, Green, Richardson, Griswold & Murphy, Portland, Or., for defendant.

## OPINION

KILKENNY, District Judge:

### STATEMENT

Plaintiffs Hyatt Chalet Motels, Inc. and Robert and Katherina Winter entered a joint venture agreement October 12, 1964, to build, own and operate a Hyatt Lodge Motel in Salem, Oregon. It was Hyatt's practice to act as its own general contractor on motels of which it was to be the sole owner. This was open to some modification in the case of joint venture arrangements. In early 1965, Hyatt entered into a contract with Reimann Construction Co. under which Reimann would construct the contemplated Salem Hyatt Motor Lodge. The fact that Reimann had an interest in the land upon which the Salem motel was to be built, was a factor in the award of the contract. Work was begun on the motel in May, 1965, and completed on October 12, 1965. Reimann's employees on that and its other jobs were not members of the defendant or affiliated Unions. After the job was finished, Reimann's employees were not present at the motel site.

The motel opened for business October 16, 1965. On October 28, 1965, members of the defendant Union began picketing the Salem motel with signs to the effect that the building had been built by Reimann's employees under substandard wages and conditions. Handbills were also distributed in the name of the defendant Union.

In December, 1965, the Regional Director of the NLRB, pursuant to Section 10($l$) of the NLRA, petitioned this court for a temporary injunction against the picketing pending a final decision by the Board. Before that injunction issued, the Union, on December 20th, stipulated with the Board that it would cease its secondary boycott activities. At that time the picketing ceased.

On February 20, 1967, the National Labor Relations Board found that the defendant, in these cases, was in violation of Section 8(b) (4) (ii) (B) of the National Labor Relations Act (secondary boycott activities), 29 U.S.C. § 158(b) (4) (ii) (B). On January 22, 1968, the Ninth Circuit approved of the Board's decision in enforcing the Board's Order. NLRB v. Salem Building Trades Council, 388 F.2d 987 (9th Cir. 1968). On December 2, 1965, Hyatt and Reimann filed these claims, under 29 U.S.C. § 187, for damages alleged to have resulted from the defendant Union's secondary boycott activities.

### LIABILITY

There is no rule that an NLRB determination of an 8(b) (4) violation cannot establish the Union's liability in a subsequent damage suit under § 303.

Each of the cases defendant cites (except Purvis v. Great Falls Bldg. & Constr. Trades Council, 266 F.Supp. 661 (D.Mont.1967)), is decided in a factual background significantly different from our own. Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union, 359 F.2d 598 (2d Cir. 1966) held that a plaintiff need not have pursued arbitration via an arbitration clause as a prerequisite to bringing a § 303 suit. Int'l. Longshoremen's & Warehousemen's

Union v. Juneau Spruce, 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952) held that the two remedies are independent and that a § 303 suit may be entertained even though the Board has not yet decided whether the defendant's conduct amounted to a violation of § 8(b) (4). The other cases cited were to the effect that the NLRB General Counsel's failure to issue a complaint is not such an adjudication on the merits of the matter in question as to be *res judicata barring* a plaintiff's subsequent § 303 damage suit. No one of these cases addressed itself to the precise question of whether an NLRB determination *can* determine liability in a § 303 suit.

In *Purvis, supra,* District Judge Smith granted a defense motion to strike the portions of a § 303 complaint dealing with earlier findings of an unfair labor practice by the NLRB. In that case, however, the findings were based on a stipulation of the parties. It was on that basis—that the earlier judgment was in the nature of a consent decree—that the court granted the motion. In dicta, Judge Smith added: "A tower of words can be constructed which would support the conclusion that a cease and desist order of the National Labor Relations Board enforced by a Court of Appeals is *res judicata* and in some cases it may very well be. *An order of the National Labor Relations Board based on a full hearing and merged in a court decree is required to be treated as a decree of the court."* Purvis, *supra,* 266 F.Supp. at 663. (Emphasis supplied.)

■ The above cited cases establish that § 303 provides a remedy independent of NLRB proceedings, and that the one may be pursued without first exhausting the other. None of that authority addressed itself to a situation where full findings on the merits were made by the Board, and the Board's

order was enforced by the Court of Appeals. In this situation, as Judge Smith opines, the NLRB order is merged in the Court of Appeals .judgment. Since the same facts supporting a finding of an unfair labor practice under § 8(b) (4) will also support an award of damages under § 303, Haughton v. Int'l. Woodworkers, etc., 168 F.Supp. 273 (D.Or. 1958), *aff'd.* Haughton v. Columbia River District Council No. 5 etc., 294 F.2d 766 (9th Cir. 1961), the previous unfair labor practice finding and enforcement order should be regarded as determinative of the question of liability in this case.

Aside from the finding of the Board and the decision of the Ninth Circuit, I have no difficulty in making an independent finding that defendant, in these cases, was in violation of the Act and that its secondary boycott activities resulted in damage which support a claim under § 303. 29 U.S.C. § 187.

■ On the issues of fact outlined in the pre-trial order, I find that defendant's conduct did threaten, coerce and restrain persons engaged in commerce while an object of defendant's conduct was to force persons to cease doing business with plaintiff Reimann Construction Company.

I do not believe that NLRB v. Fruit & Vegetable Packers & Warehousemen, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964), is of value in the decision of this case.

## STATUTE OF LIMITATIONS

■ Plaintiffs Robert and Katherina Winter were added by amendment February 8, 1968. At the same time, plaintiff's motion to add Carpenters' Local 1065 and Laborers Local 441, as defendants, was denied. The Union contends that the Oregon two-year statute of limitations[1] is applicable and had run at

---

l. ORS 12.110(1).

"12.110 *Within two years; determination of period in action for fraud or deceit; injuries to person from professional malpractice.* (1) An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced

the time of the amendment. The Winters were added after they had taken an assignment of Hyatt's entire interest under the joint venture agreement. Plaintiffs contend that ORS 12.080(1) and (2) is applicable.[2] Int'l. Union of Operating Engineers v. Fischback & Moore, Inc., 350 F.2d 936 (9th Cir. 1965), *cert. denied sub nom;* Draucker, Inc. v. Int'l. Union of Operating Engineers, 384 U.S. 904, 86 S.Ct. 1336, 16 L. Ed.2d 358, 19 A.L.R.3d 1026 (1966) makes the state statutes of limitation applicable to § 303 actions. Boycott activities in this case ceased December 20, 1965. The Winters were not added as plaintiffs until February 8, 1968 (26 months later). The Union now contends their addition by amendment was not proper because their claim was barred.

■ The test of whether a right is "created by statute", under ORS 12.-080(2), is whether such right so changed the liability imposed by common law as to create an entirely new and distinct liability. Shelton v. Paris, 199 Or. 365, 367, 261 P.2d 856 (1953); Hoffman v. Wair, 193 F.Supp. 727 (D.Or.1961). Under normal circumstances, the two year statute of limitations would be applicable to actions under § 303.

Here, however, we are not faced with a new action. Here, the complaint was filed within the statutory period and the Winters were added, as parties plaintiff, after the expiration of the two year period. Rule 15(c), F.R.Civ.P., with reference to the relation back of amendments was obviously enacted to meet this type of a problem. The Advisory Committee's note makes it clear that the 1966 Amendment to this Rule was intended to cover the situation here presented.[3]

■ At the time of the boycott, the Winters and Hyatt were joint venturers. Subsequent to the commencement of the action, Winters took an assignment from Hyatt of all of its interest in the venture. The adding of the Winters as parties plaintiff, did not inject a new cause of action. Additionally, the appearance of the Winters as parties plaintiff did not, in any way, prejudice the Union's defenses. The Winters were properly added as parties plaintiffs. 3 Moore, Federal Practice, ¶15.15 [4.–2]; Id. at ¶ 15.15 [4.–1] at pp. 1046–1048.

Martz v. Miller Bros. Co., 244 F.Supp. 246 (D.Del.1965) on which defendant Union relies, was decided prior to the 1966 Amendment of Rule 15(c). Moreover, Moore criticizes the decision even under the language of the former rule. 3 Moore, Federal Practice ¶15.15 [4.–1] at p. 1048.

## REAL PARTY IN INTEREST

■ Union urges that Hyatt Chalet Motels is not a real party in interest as required by Rule 17(a), F.R.Civ.P. The record shows that in November, 1965, Hyatt was reorganized and became "Northridge Industries, Inc.". Nonetheless, one month later, Hyatt commenced this suit. In September, 1966, Hyatt assigned all of its right, title and interest in the motel venture to the Winters, including the cause of action out of which this claim arose. The record before me justifies a finding that the reorganization amounted to little more than a formal change of name, without a substantial change in operations or internal management. No doubt, the action should have been commenced under the name of Northridge, rather than Hyatt. The error goes to form,

within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

2. ORS 12.080(1) and (2).
 "12.080 *Within six years.* (1) An action upon a contract or liability, express or implied, excepting those mentioned in

ORS 12.070 and 12.110 and except as otherwise provided in ORS 72.7250;
 (2) An action upon a liability created by statute, other than a penalty or forfeiture, excepting those mentioned in ORS 12.110; * * *."

3. "The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is

rather than substance, and the error could have been corrected by a simple amendment under Rule 17(a). Even at this late date, the title could be changed to conform to the names of the real parties in interest. American Fidelity & Casualty Co. v. All-American Bus Lines, Inc., 190 F.2d 234 (10th Cir. 1951), *cert. denied* 342 U.S. 851, 72 S.Ct. 79, 96 L.Ed. 642 (1951); 3A Moore, Federal Practice ¶ 17.15–1, page 603.

■ Next, the Union urges that the assignment from Hyatt to Winters completely destroyed the interest of both Hyatt and Northridge. In making this argument, the Union completely overlooks Rule 25(c), F.R.Civ.P. This rule gives the court a generous discretion in connection with the continuance of actions where there has been a transfer of an interest. Sun-Maid Raisin Growers of California v. California Packing Corp., 273 F.2d 282 (9th Cir. 1959); McComb v. Row River Lumber Co., 177 F.2d 129 (9th Cir. 1949). In my construction of the rule, I am governed by federal law. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

■ On this record, the Winters, under proper practice, should have been substituted for Hyatt. Be that as it may, there is no good reason for not allowing the suit to proceed in the name of the original party and the real party in interest, the Winters. If either party so moves, I shall eliminate Hyatt (Northridge) and enter judgment in favor of the Winters. In the last analysis, the record with reference to parties plaintiff, discloses a procedural comedy which in no way affects the substantial rights of defendant.

### WINTERS DAMAGE CLAIM

■ That defendant foresaw that its picketing would cause damage to plaintiffs' motel is beyond question. Inasmuch as the motel was completed at the commencement of picketing, its only purpose was to discourage travelers from using the facility. True enough, the evidence on the amount of damages is inconclusive and the award must be somewhat on the arbitrary side. Nonetheless, to deny the plaintiffs' damages because they are of a nature which cannot be ascertained with any degree of certainty, would permit defendant to profit by and speculate upon its own illegal acts. As is said in Story Parchment Co. v. Paterson Paper Co., 282 U.S. 555, 564, 51 S.Ct. 248, 251, 75 L.Ed. 544 (1931), "Such is not, and cannot be the law, though cases may be found where courts have laid down artificial and arbitrary rules which have produced such a result."

■ In a case such as this, where the amount of damages cannot be estimated with certainty, or only a part of them can be estimated, the trier of the facts should consider all of the facts and circumstances in the case, having a tendency to show damages and their probable amount. He should then go forward and make the most intelligent and probable estimate which the evidence in the case will justify. On this mode of estimating damages, *Story Parchment* says: "Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced; * * *." Even United Mineworkers of America v. Osborne Mining Co., 279 F.2d 716 (6th Cir. 1960), *cert. denied* 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed. 2d 103 (1960), cited by defendant states that it would be a perversion of fundamental principles of justice to deny all relief to the injured person and thereby relieve the wrongdoer from making amends for his wrongul acts. Defendant's picketing caused damage to the plaintiffs and I so find. Moreover, I find that defendant did not terminate the picketing until December 20th. The

---

generally easier. Again the chief consideration of policy is that of the statute of limitation, and the attitude taken in re-

vised Rule 15(c) towards the change of defendants extends by analogy to amendments changing plaintiffs."

motel was open for only 11 days prior to the picketing. Defendant's argument that the motel had more business during the picketing and during the following season than it did for the first 11 days after it opened is true, but it does not follow that damages were not sustained during the picketing period and the following months. There is no evidence as to the number of possible guests that may have refused to cross the picket line, but common sense teaches that a substantial number would not cross. Additionally, the effect of the picketing would not cease the moment the pickets were withdrawn. Those who refused to cross the line would probably pass on to their friends the fact that the motel was being picketed. The fact that the registrations in the motel increased during the period of picketing merely shows that a number of people do not respect the picket lines.

Defendant's contention that the measure of damage should be limited to the occupancy rate for the 11 day period immediately prior to the picketing is completely unrealistic. Fortunately, for the plaintiffs, the picketing commenced at the start of the generally slack winter season. I find that the effects of the picketing had completely disappeared prior to the commencement of the rush season in 1966. Arbitrary as it may seem, it is my finding that plaintiffs Winters suffered compensatory damage of $350.00 per month as a direct result of defendant's picketing for a period of six months following October 28, 1965, a total damage of $2,100.00. The loss was probably heavier during the early months and lighter during the later months. Beyond April 28, 1966, plaintiffs suffered no damage, either direct or consequential. The award is in connection with the unlawful picketing. The distribution of the handbills was of no consequence.

### REIMANN'S DAMAGE CLAIM

Reimann limits its claim to two specific jobs: (1) Portland Hyatt job, and (2) Western State Bank job.

(1) I am impressed with the defendant's argument that plaintiffs' own exhibits demonstrate that Reimann was considered, but never was in line for the Portland job. The Portland Hyatt Motel is owned outright by the Hyatt group. The Salem motel was a joint venture. The prospectus for the Portland job clearly stated that Hyatt acted as its own "general contractor" in the construction of all of the Hyatt coffee shops and Hyatt Lodges owned by the company. Northridge, successor to Hyatt, followed the same general policy. The great weight of the evidence is against Reimann's contention that it would have built the Portland motel, had not the unlawful picketing intervened. At most, Reimann had a good chance if Hyatt completely changed its customary rule of acting as its own general contractor. Moreover, there is abundant evidence that neither Hyatt, nor its successor, would build the Portland, or any other motel, with a non-union general contractor. The weight of credible evidence supports a finding that Hyatt (Northridge) did not know Reimann was non-union until the picketing commenced at the motel. On these issues, I accept the original testimony of Amoroso, President of Hyatt, as against his later denial. Amoroso's letter on the general issue was written at the request, and probably at the direction of Bob Smith, the agent of Reimann. The letter is in complete contradiction of Amoroso's previous statements and is unworthy of serious consideration. To be kept in mind, is that Reimann had never built anything in Portland, nor in Multnomah County, before, or even after, the date in question. He did not even have a Portland business permit. There is substantial evidence in the record which indicates that it is completely impracticable for a Salem contractor to compete in the construction business in the Portland area.

(2) Western Security Bank was a competitively bid job in which five Salem contractors submitted bids. Reimann claims that he was denied the opportunity to bid. That the bidding was com-

petitive is demonstrated by the fact that there was more than a $10,000.00 spread between the highest and the lowest bid. At all times, the bank intended to, and did, award the contract to the lowest bidder. Competitive bidding was the bank's practice for years and on all occasions the awards went to the lowest bidder. Even conceding that Reimann was denied a right to bid, there is absolutely no evidence that his bid would have been low or that he would have been awarded the job.

This claim is based on the testimony of Grabenhorst, a friend, who told Reimann that he could not bid. This was after Grabenhorst attended an informal meeting of some of Western's directors. Of particular significance is the fact that this decision was made in the informal meeting at the time of the first picketing at the Candelaria Shopping Center. The first picketing at Candelaria, which continued for weeks, was not done by the defendant, but by entirely different unions. On the totality of evidence, I must find that the later picketing by the defendant at the same site is of no importance. The damage, if any, was caused by the initial picketing by the other unions. The later picketing by defendant had nothing to do with the bank's decision to bar Reimann from bidding on this job.

 Without going into further detail, I find that Reimann has failed to carry its burden of proof on the issue of damages. It is entitled to nominal damages only in the sum of $100.00.

The objections to Exhibits 1, 2 and 3 are overruled. In the light of what has been said, ruling is unnecessary on Exhibits 11, 12, 24 and 25. Yet, if necessary, I would sustain the objections to those exhibits.

A duplicate original of this opinion shall be filed in each case and shall serve as my findings and conclusions on the issues of law and fact presented in the respective pre-trial orders.

An appropriate judgment shall be prepared, served and presented in each of the cases.