**Richard RODGERS, Plaintiff,**

v.

**LOCAL NO. 8 AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA, Defendant.**

**No. 72–C–665.**

United States District Court,
E. D. Wisconsin.

Nov. 20, 1975.

Whyte & Hirschboeck by James W. Mohr, Jr., Milwaukee, Wis., for plaintiff.

Goldberg, Previant & Uelmen by David L. Uelmen, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On September 3, 1975, this matter was tried to the court. The opinion which follows constitutes the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure.

At the outset of trial, counsel were able to enter into a number of agreements. Based on counsels' stipulations, I ordered the dismissal of the American Federation of Musicians of the United States and Canada. Also, counsel were able to concur with respect to several proposed findings of fact and conclu-

sions of law as indicated by an asterisk in the plaintiff's findings of fact and conclusions of law. Accordingly, I adopt findings of fact ¶¶ 1–17 and conclusions of law ¶¶ 2 and 4 as those of the court.

## I. MOTION TO ADD PARTIES

■ As a part of the plaintiff's post-trial submissions, he filed a motion to add parties plaintiff pursuant to Rule 21, Federal Rules of Civil Procedure. The motion seeks the addition of persons who were members of the plaintiff's band between 1967 and 1973. I conclude that such motion should be denied.

The motion to add parties was apparently prompted by the defendant's assertion during trial that the plaintiff should only be entitled to recover, if at all, for his individual losses and not on behalf of the orchestra which he leads. Although it is my opinion that the plaintiff is entitled to recover damages on behalf of his orchestra, I believe that it is unnecessary to allow the addition of parties plaintiff to accomplish that goal.

A search of the files and records of this case makes it evident that the defendant will suffer no prejudice if the plaintiff is permitted to recover on behalf of the orchestra as a business entity. While the orchestra is a partnership for tax purposes, the record reveals that for all other purposes, including this lawsuit, the plaintiff is the sole proprietor and business manager of his orchestra. Accordingly, he is entitled to recover whatever damages the orchestra suffered as a business entity.

Were I to permit the joinder of the individual band members at this late date, difficult and new questions as to how damages should be apportioned among such individuals would be presented. By allowing the plaintiff to recover damages on behalf of the orchestra, I leave the plaintiff to distribute the proceeds recovered to his sidemen pursuant to any agreement he may have with them.

## II. LIABILITY

■ Notwithstanding the defendant's argument to the contrary, I find that during the period between 1966 and 1971, the plaintiff was engaged in an industry or activity affecting commerce for purposes of 29 U.S.C. §§ 152(6) and (7) and within the meaning of 29 U.S.C. § 187(a). This is especially apparent from the level of business activities outlined in proposed findings of fact ¶¶ 3 through 9. See *Marty Levitt*, 171 N.L.R.B. 739 (1968); *American Guild of Musical Artists*, 157 N.L.R.B. 735 (1966).

Moreover, it is my opinion that this action is properly brought under 29 U.S.C. § 187(a) and that this court has jurisdiction pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 187(b).

■ In my view, the evidence presented at trial supports the conclusion that Richard Kosmatka, the proprietor of the Mellody Bar, was subjected to coercion by the union which violated 29 U.S.C. §§ 158(b)(4)(ii)(B). The same conclusion is applicable to the union's conduct toward Robert T. Devine, the proprietor of Devine's Million Dollar Ballroom.

Credible evidence demonstrates that after Richard Kosmatka made arrangements with the plaintiff for two engagements in 1966, Mr. Kosmatka was contacted by the union in connection with his use of the plaintiff's nonunion band. Mr. Kosmatka was told by Mr. Russell Wussow, at that time the defendant union's president, that if he continued to use nonunion music (1) he would be expelled from the defendant union, (2) he would lose the services of union bands, including his own, (3) he would be placed on the "unfair" or "do not patronize" list, and (4) he could be picketed. Similar pressures of this nature continued into 1967 in connection with Mr. Kosmatka's use of other nonunion bands.

With respect to Mr. Devine, the evidence shows that Mr. Wussow was Mr.

Devine's house band during the time that Mr. Wussow was the defendant's vice-president and that on numerous occasions between 1965 and 1967, Mr. Wussow made plain that the use of nonunion bands could result in placement on the "unfair" or "do not patronize" list. It is also clear that Mr. Devine feared that the union would picket his establishment if nonunion bands such as the plaintiff's were used. Mr. Devine testified that although he used the plaintiff's band in 1965, he did not use it thereafter because of the union's statements.

In my opinion, the conduct of the union toward Messrs. Kosmatka and Devine amounted to unlawful secondary boycott activity under 29 U.S.C. § 158(b)(4)(ii)(B). See *Local 802, AFM,* 171 N.L.R.B. 1106 (1968); *Schauffler v. Musicians Local 77,* 40 CCH Lab.Cas. ¶ 66,570 (E.D.Pa.1960). Also, the union's threats of picketing and placement on an "unfair" or "do not patronize" list constituted unlawful threats, coercion and restraint for purposes of § 158(b)(4) (ii)(B). *Electrical Workers Local 41,* 162 N.L.R.B. 620, 624 (1967); *Teamsters Local 868,* 156 N.L.R.B. 67, 71 (1965); *Teamsters Local 375,* 182 N.L. R.B. 650, 654 (1970); *Laundry Dry Cleaning & Dye Houseworkers Local No. 259,* 164 N.L.R.B. 426, 436 (1967) (threats of picketing); *NLRB v. Carpenters,* 184 F.2d 60 (10th Cir. 1950); *Schauffler v. Musicians Local 77,* 40 CCH Lab.Cas. ¶ 66,570 (E.D. Pa.1960) (threats to place neutral employer on "unfair" list).

Although the plaintiff urges that other places of potential employment within the defendant's jurisdiction were the subject of unlawful activity similar to that described above, I believe that the plaintiff has failed to adduce adequate proof of this contention. Moreover, I do not accept the plaintiff's invitation to regard the two incidents which have been satisfactorily proved as convincing evidence of unlawful secondary boycott activities throughout the defendant union's jurisdiction. As a consequence, damages will be limited to the injury resulting from the defendant's interference with the plaintiff's business relationship with Messrs. Kosmatka and Devine.

## III. DAMAGES

■ Generally speaking, although precise proof of damages in a case such as this is difficult, the plaintiff is entitled to recover an amount which the evidence supports as a just and reasonable approximation. *Mason-Rust v. Laborer's Local. No. 42,* 306 F.Supp. 934, 939 (E.D.Mo.1969); see *Hyatt Chalet Motels, Inc. v. Salem Building & Construction Trades Council,* 298 F.Supp. 699 (D.Ore.1968). Allowing the plaintiff recovery for lost business opportunities reflects the fair application of the "just and reasonable" concept to this case.

There is evidentiary support that Messrs. Devine and Kosmatka would have hired the plaintiff approximately six times per year during the pendency of the defendant's unlawful conduct. However, Devine's Ballroom closed in February 1968, and the Mellody Bar was able to hire the plaintiff on two occasions in 1971. Thus, the plaintiff lost six opportunities per year to play at Mr. Kosmatka's Mellody Bar up to and including 1970; in 1971, four such opportunities were lost. As to Devine's Ballroom, six opportunities were lost in 1967 and 1 in 1968.

■ I believe that the engagements in the Mellody Bar and Devine's Ballroom would have fairly generated at least one additional private party-type engagement in each of the years between 1967 and 1971, inclusive. Accordingly, as a result of the defendant's conduct, the plaintiff lost 13 opportunities for engagements in 1967, 8 opportunities in 1968, and 7 opportunities in each of the years 1969 and 1970, and 5 engagements in 1971.

Engagements in each year would bring a certain average amount of income. In my opinion, the best source for this figure is defendant's exhibit number 2. However, it is clear that the

figure for "net income orchestra per booking" is slightly on the low side because certain expenses were deducted in arriving at those figures which were not incured in connection with an orchestra booking. I believe it is fair and reasonable to adjust those figures slightly upwards when applied to the evaluation of the value of lost bookings for each year.

Applying the following figures, the plaintiff is entitled to the recovery of the following amounts:

| Year | Opportunities lost | Net Inc. per booking (Adjusted by the court) | Total |
|------|------|------|------|
| 1967 | 13 | $150 | $1950 |
| 1968 | 8 | 150 | 1200 |
| 1969 | 7 | 185 | 1295 |
| 1970 | 7 | 200 | 1400 |
| 1971 | 5 | 200 | 1000 |
| | | Total | $6845 |

The plaintiff also seeks to recover damages because of lost record sales, but I find that no recovery for this item is warranted. The record sales aspect of the plaintiff's business has operated as a loss from the period between 1964 and 1973. Indeed, during the critical period between 1967 and 1971, the losses were particularly heavy. The plaintiff has offered no evidence or satisfactory explanation as to why the lost opportunities for record sales resulting from the defendant's conduct would not simply have generated further losses on the whole.

### IV. ORDER AND JUDGMENT

Therefore, it is ordered that the plaintiff's motion to add party plaintiffs be and hereby is denied.

It is ordered and adjudged that the plaintiff recover from the defendant the sum of Six Thousand Eight Hundred Forty-five Dollars ($6,845.00), with interest thereon as allowed by law and his costs of the action.